Edward J. McLaughlin, J.
This is a hearing to determine whether, pursuant to section 532 of the Family Court Act, the respondent is financially able to pay for the costs of a blood grouping examination in a paternity proceeding.
The action was commenced when the petitioner, Onondaga County Commissioner of Social Services, filed a verified petition with this court pursuant to section 522 of the Family Court Act. The commissioner was authorized to originate the proceedings since he alleged that the child in question was a public charge on the county. The respondent appeared before this court and denied that he was the father of the child and requested a blood grouping test. He alleged that he was unable to pay for the test and moved the court to order the appropriate agency to pay for it. The court held a hearing on *1095 the single issue of the respondent’s ability to pay $120 for the costs of a blood grouping test.
At the hearing, the uncontradicted testimony of the respondent was that his income consisted of unemployment insurance benefits and a disability pension from the Veteran’s Administration totaling $417 per month. The respondent’s uncontradicted testimony was that his needs were $406 per month.
The petitioner alleges that even if the respondent cannot presently afford the blood grouping test, the petitioner should not be required to pay for it. He asserts that but for the respondent’s self-imposed state of indigency, he would have the necessary funds. The petitioner alleges that the statutory standard is the respondent’s incapability of earning a sufficient salary to pay for the test, not merely a present financial inability.
The issue is one of first impression for the Family Court. The question is whether the respondent’s conduct and attitude towards seeking employment are relevant in determining his financial ability to pay for the costs of a blood grouping examination in a paternity proceeding.
The applicable statute, section 532 of the Family Court Act, states: "If the respondent is financially unable to pay for the costs of a test, the court may * * * direct payment * * * from the funds of the public welfare officer where the child is or is likely to be a public charge.”
Essentially, the petitioner seeks to have this court read into section 532 the provisions of section 412 of the Family Court Act. Such an interpretation is not possible. Section 412 states: "A husband is chargeable with the support of his wife and, if possessed of sufficient means or able to earn such means, may be required to pay for her support a fair and reasonable sum.” The language, "or able to earn such means”, directs the court’s attention to a husband’s potential earnings, not his actual earnings. It invites a determination of the husband’s attitude toward employment, whereas section 532 is entirely silent on that subject. (See Matter of Grant v Grant, 61 Misc 2d 968.) In a support proceeding, the sole issue is the husband’s financial ability to support his wife, while in a filiation proceeding the issue of paternity is a condition precedent, which must be proved, in order for the question of support to even arise.
The legislative history of section 532, at the very least, *1096 supports the view that the question of an inability to afford a blood test is purely a factual issue and does not depend upon the attitudes of the respondent. The Joint Legislative Committee on Court Reorganization, in its report to the Legislature, with regard to the creation of the Family Court, proposed that "blood test be required in every (paternity) case, to be made by official authorities without direct cost to the parties.” (Emphasis added; Joint Legislative Committee on Court Reorganization, Part II, the Family Court Act, p 97 [1961].) The proposal by the committee was considerably broader in scope than the statutory provision which was ultimately adopted by the Legislature. However, its inclusion as a committee comment following the text of section 532 indicates the spirit with which this section should be interpreted. It is to be noted that recently proposed Federal legislation would have substantially adopted the Joint Committee comment. The Federal Child Support Act of 1971 (S 2081, 93rd Cong, 1st Sess [1973]), sought to establish federally sponsored regional blood grouping laboratories, available without cost to courts or local public agencies.
In the only interpretation of the statute to date (1965 Opns Atty Gen 130), the Attorney-General said that a Social Services investigation, which concluded that the applicant was not entitled to public assistance, had no relevancy to the applicant’s ability to pay for a blood grouping test under section 532. The opinion was impliedly based upon the difference between the Social Services Law, which will not permit public assistance to an applicant able but unwilling to work, and section 532 which is concerned only with "whether the respondent can pay for the test.” (1965 Opns Atty Gen 130, 131, supra.)
Prior to 1962, there was no statutory recourse for an indigent respondent who desired a blood test in a paternity proceeding. However the Third Department as early as 1941 held that a blood grouping test is a substantial right and should not be made to depend upon the financial resources of the defendant. (People v Doherty, 261 App Div 86; accord Fowler v Rizzuto, 121 NYS2d 666.)
Were the court to adopt the reasoning of the commissioner, it would have but two choices; first, it could deny the respondent’s request that the commissioner pay for the examination or, second, it could delay the trial in the hope that the *1097 respondent would earn the necessary funds to pay for the test himself sometime in the future.
To adopt the first alternative would effectively deprive the respondent of the only scientific method of conclusively demonstrating nonpaternity. (Hansom v Hansom, 75 Misc 2d 3.) The second alternative would deprive the child and the public of a just, speedy and inexpensive determination of the issue.
This court holds that the formula for computing the respondent’s financial ability to pay for a blood grouping test consists of taking the respondent’s income and adding to it his readily available financial assets, and from this sum subtracting the debts and living expenses of the respondent and his dependents. Accordingly, we find that this respondent is financially unable to afford the costs of the blood grouping examination.
This court further holds that section 532 of the Family Court Act will not tolerate an examination into the respondent’s attitude towards seeking employment. The section is limited solely to the factual question of the respondent’s present ability to pay for the examination.
It is hereby ordered that the costs of the blood test will be paid by the public welfare officer who brought the petition.*

 On the 2nd of June, 1975, the court received the results of the blood grouping examination which it ordered. The test excluded the respondent from the paternity of the child.