OPINION OF THE COURT
Edith Miller, J.
The three issues before this court are (1) Does a petitioner father have the right to institute a paternity proceeding when he is not certain that he is the father; (2) Does the petitioner father have a right to a court order for the Human Leukocyte Antigen (HLA) test in addition to the standard ABO blood grouping test; and (3) Are the results of the HLA test admissible as evidence when the test does not exclude paternity. The history of the case is as follows.
On March 27, 1978 the Commissioner of Social Services filed a neglect petition in the Family Court in respect to a child born on October 31, 1976. Alice Norman, the mother of the child, was named as the respondent. Although the petition alleged that John Goodrich was the father of the child, Mr. Goodrich was not named as a' respondent. However, as a putative father he was given notice of the proceeding and was present in the courtroom. On May 25, 1978, after a fact-finding hearing, the court sustained the petition and ordered an investigation and report. At the dispositional hearing held on July 28, 1978, the court found that the emotional problems of the mother made it unlikely that she would be able to care for the child in the near future. Therefore, in the best interests of the child, the child was placed in foster care for a period of 18 months.
On November 27, 1978, John Goodrich filed a paternity petition in the Family Court. On December 19, 1978, the return date, the petitioner informed the court that he did not know whether or not he was the father of the child. Mr. Goodrich requested a hearing so that the paternity of the child could be adjudicated. However, the court dismissed the petition without prejudice on the ground that his statements *35 of uncertainty were inconsistent with his sworn statements contained in the petition alleging that he was the father of the child. The petitioner had appeared without counsel and was urged to consult an attorney concerning the very complex issues that are involved in a paternity proceeding.
On February 15, 1979, the petitioner through counsel filed a notice of motion for rehearing and the motion was granted. When the matter was brought before the court on June 25, the court appointed counsel to represent the respondent mother. Although the mother was not hospitalized, the court wanted to be certain that she understood the nature of the proceeding. An application was made by the Law Guardian who had represented the child in the neglect proceeding to be appointed to represent the child in the paternity proceeding. Ordinarily a child is not represented by counsel in this proceeding as a child is not deemed to be a necessary party inasmuch as an order of filiation is not binding upon the child (see Commissioner of Public Welfare v Koehler, 284 NY 260). However, because of the special facts and circumstances of this case, the court granted the application.
The petitioner, through counsel, indicated that he still was not certain whether or not he was the father of the child in question. However, the petitioner stated that if he was found to be the father of the child he was willing to accept his responsibilities. Section 523 of the Family Court Act requires that a verified petition be filed alleging that the petitioner is the father of the child in question. For a man to allege anything less might subject the mother of a child born out of wedlock to needless embarrassment and harassment in addition to the investment of time and money in a frivolous lawsuit. However, the court has considered that in the matter herein, the petitioner has been named as the father of the child in the Family Court records concerning the neglect petition. Moreover, his name appears as the father of this child in the records of the Department of Social Services. Although the mother of the child has a right pursuant to section 522 of the Family Court Act to institute a proceeding to establish the paternity of the child, she has not filed a petition against the respondent or any other man. The Commissioner of Social Services pursuant to the same section also has the right to institute said proceeding, but the commissioner also has failed to do so even though mandated by the Federal Government regulations (see 45 CFR 302.31). Such *36 inaction by interested parties had left the petitioner in a state of limbo in respect to his relationship to the child, if any. Moreover, the petitioner had consulted learned counsel and the court was satisfied that the petitioner recognized the full import of a paternity proceeding. Therefore, the court found that the petitioner was entitled to a hearing on the issue of paternity in the interest of justice, even though his signature on the verified petition alleging paternity was inconsistent with his court statement under oath that he is uncertain as to his alleged parentage.
In his moving papers, the attorney for the petitioner further requested that the court order the HLA test in addition to the standard blood grouping tests relying on the American Medical Association (AMA) and the American Bar Association (ABA) joint report on the use of blood tests in paternity proceedings. (Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Fam LQ 247.) Section 532 of the Family Court Act provides in part as follows: "The court, on motion of any party, shall advise the parties of their right to a blood test and shall order the mother, her child and the alleged father to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the alleged father can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion is established.”
At the time that this statute was enacted the standard blood grouping tests that were universally accepted were performed only on red blood cells. The three blood group systems, ABO, MN and RH do not constitute opinion evidence if there is a report of exclusion. The exclusion is a scientific fact of nature which can be demonstrated in the courtroom if necessary as the results of the test are visible ünder a microscope. (Schatkin, Disputed Paternity Proceedings [4th ed], § 9.13.) Therefore, in respect to both statutory and case law, an exclusion is deemed to be conclusive on the issue of paternity in all cases where the test has been properly administered. However, red blood cell testing involves only a limited number of variables. While the tests can prove that the petitioner herein is not the father of the child, they cannot prove that he is the father. A man who has been incorrectly named has only a 50-60% chance of being excluded conclusively, depending upon his blood type. Therefore, relying on *37 the standard tests alone would not assauge the doubts of the petitioner unless he was definitely excluded.
The HLA test is based on tissue typing of the white blood cells. This test is far more comprehensive because it involves a larger number of factors such as antigens in the white blood cells. It is widely accepted in scientific communities because in cases involving organ transplants it is used to match the donor and the recipient. Accuracy is essential when dealing with the lives of patients. The HLA test if far more expensive than the standard blood grouping tests and has not been used routinely by the courts in New York. However, the possibility of this respondent being excluded if he has been incorrectly named is somewhat better than 90%. Both the standard blood grouping tests and the HLA tests are performed on samples of blood taken from the parties. The language of section 532 of the Family Court Act authorizes "one or more blood grouping tests”. The court found, therefore, that the HLA test is a blood test within the meaning of the statute and appointed Dr. Fred H. Allen, a world-recognized authority, to perform both the standard blood grouping tests and the HLA test at the New York Blood Center. The matter was then set down for hearing by consent of all parties for August 15, 1979.
On August 15, 1979, the respondent mother did not appear at the hearing. Her present whereabouts are unknown to her attorney. However, based upon the testimony of Dr. Allen and the court exhibits the court makes the following findings of fact.
On July 2, 1979, the parties appeared at the New York Blood Center. The parties were photographed there and signed the photographs. Samples of blood were drawn from each of the three parties and the tests were conducted on the same day. In the routine blood grouping tests which were done on the red blood cells, the petitioner was not excluded in the ABO system. The MN system had an indirect exclusion. However, in the HLA system there were three direct exclusions.
One of the elementary scientific rules of heredity is that a person may not possess a genetic factor which is lacking in both of his or her real parents. The doctor found no hint of maternal exclusion and therefore assumed that Alice Norman was the true mother. However, the doctor found that the child had at least three antigens in the HLA system and one antigen in the RH system, none of which were present in *38 either adult. When those factors were considered with the results of the routine blood tests performed by the doctor, he concluded that paternity was definitely excluded. It was not necessary for the doctor to perform all of the more than 50 tests and the center refunded to the respondent the money not utilized for tests. This was in conformity with the AMA-ABA report which stated that it was not mandatory to utilize the entire set of tests once an exclusion had been definitely reached.
Based on the scientific evidence that he was excluded as the father of the child, the petitioner made an application to withdraw his petition and the application was granted.
Since the above testing resulted in the exclusion of paternity by the petitioner, this court was not confronted with the issue of whether or not the results of an HLA test are admissible in a paternity proceeding where there is no exclusion of paternity. This identical issue was resolved in a recent decision of a California appellate court. The trial court had ruled that the HLA test which did not exclude paternity of the child was inadmissible. In the appellate decision which reversed the judgment of the lower court, Justice Tamura wrote: "It appears reasonably probable that absent the erroneous ruling, plaintiff could have established the foundational requirements for the admissibility of the HLA test to prove paternity and introduced the test results into evidence for that purpose.” (Cramer v Morrison, 88 Cal App 3d 873, 888-889.)
However, there is no statutory exclusion of a blood test in California as there is in the State of New York. Section 532 of the Family Court Act was enacted because the results of the standard blood grouping tests with an exclusion rate ranging only between 50 and 60% would have had a prejudicial effect in respect to an incorrectly named party that far outweighed the probative value. Therefore, the tests would have been inadmissible whether or not section 532 of the Family Court Act specifically excluded them. The results of the HLA tests, on the other hand, can establish the probability of paternity in cases where there is no definite exclusion somewhere between more than 97% but less than 100% depending upon the parties. However, the results of the HLA tests are prohibited by section 532 of the Family Court Act despite the fact that the probative value of these tests far outweighs the prejudicial effect. As a result, even though paternity proceed *39 ings are tried without a jury, the court is prohibited from receiving this competent scientific test into evidence.
The court is mindful of section 73 of McKinney’s Statutes, which reads in part that, "A statute must be read and given effect as it is written by the Legislature, not as the court may think it should or would have been written if the Legislature had envisaged all of the problems and complications which might arise in the course of its administration”. In the matter herein, if there had been no exclusion of paternity, the results of the HLA tests would have been admissible by stipulation because all parties consented to waive the statutory protection of section 532 of the Family Court Act in order to reach a just determination in the proceeding. The petitioner herein was genuinely seeking scientific proof of his paternity and each side had an opportunity to question Dr. Allen fully on this subject. Under the facts and circumstances of this case, considering the emotional problems of the mother, the petitioner could not have relied upon her testimony to affirm his paternity. However, he had agreed to accept the scientific corroboration because not only did he have sexual intercourse with the mother during the critical period but he also had suspected another man may also have had access during the critical period.
The court notes that under the present law in the State of New York, a man may be required to furnish support for a child born out of wedlock based on the uncorroborated testimony of the mother providing her testimony has been clear and convincing and entirely satisfactory. (Anonymous v Anonymous, 13 Misc 2d 718, affd sub nom. Department of Welfare of City of N. Y. v Jarcho, 7 AD2d 979.) Yet a widely recognized scientific test must be excluded by the court. The court further notes that under the Federal Rules of Evidence, rule 402 (US Code, tit 28, Appendix) provides in part that: "All relevant evidence is admissible * * * Evidence which is not relevant is not admissible.” Moreover, the general rule in this State is that all relevant evidence is admissible unless to receive it would violate some exclusionary rule. (See Richardson, Evidence [10th ed], §§ 5, 146.) For these reasons, the court is concerned that the New York statute as written might be in violation of due process of law and urges the Legislature to reexamine section 532 in the light of present day scientific information.