OPINION OF THE COURT
Lucille Polk Buell, J.
Respondent moves by notice of motion and affidavit dated November 29, 1979 for a second blood grouping test at the county’s expense.
Petitioner opposes the motion by affidavit in opposition dated December 11, 1979.
Respondent has submitted a reply affidavit dated December 12, 1979.
A paternity petition dated April 28, 1978 alleges respondent is the father of Denise Moore, born April 6, 1978.
Subsequent to the filing of the petition the child became a recipient of public assistance. The Westchester County Department of Social Services was made a party to this proceeding and the County Attorney represents petitioner.
On May 16, 1978 the Honorable Matthew F. Coppola assigned counsel to respondent who was 15 years old when the petition was filed and 14 years old when the child’s conception occurred. Respondent entered a denial and requested a blood grouping test. No request was made for any test other than the standard red blood cell tests given all parties in all paternity proceedings before this court. Respondent agreed to pay for the test.
The red cell blood grouping test, which is the test routinely performed in these matters, was conducted and the test results dated September 17, 1979 indicated respondent’s paternity could not be excluded. A proceeding to review the blood test results was held on October 4, 1979. No objection was raised by the counsel assigned on behalf of respondent as to the test performed nor did he make a request for a second test. The matter was adjourned for a hearing.
Respondent now moves for a second blood grouping test, known as the HLA (Human Leukocyte Antigen) test, which *474 differs from the standard test already performed and demands that the county pay the cost of this test. Petitioner and the child will also have to submit to the second test if ordered.
Respondent claims that the HLA test is based on a larger number of comparative factors and that the exclusion rate for a male incorrectly alleged to be the father is better than 90% as opposed to the 50% to 60% exclusion rate of the standard red cell blood grouping test.
The court notes that respondent is not attacking the accuracy of the test .already conducted and is not requesting that the same test be repeated. (Cf. Matter of Carol B. v Felder R. J., 94 Misc 2d 1015 in which the court ordered a repetition of the same test conducted four years earlier.)
The court is aware of the arguments made in support of the various blood grouping tests which have been developed in addition to the standard red cell blood grouping test. (See, generally, 1 Schatkin, Disputed Paternity Proceedings [1977 ed], ch 8; see, also, Lascaris v Lardeo, 100 Misc 2d 220; Matter of Goodrich v Norman, 100 Misc 2d 33; Matter of Harris, NYLJ, Sept. 10, 1979, p 15, col 6.) These cases indicate that scientific advances have been made in recent years in the area of blood grouping tests and that it may be determined in certain instances that one type of test is preferable to another, or even that perhaps the HLA test should be conducted in all paternity cases. However, section 532 of the Family Court Act which deals with blood grouping tests does not provide that specific tests be conducted in preference to or in addition to any other test.
Section 532 of the Family Court Act states: "The court, on motion of any party, shall advise the parties of their right to a blood test and shall order the mother, her child and the alleged father to submit to one or more blood grouping tests by a duly qualified physician to determine whether or not the alleged father can be excluded as being the father of the child, and the results of such tests may be received in evidence but only in cases where definite exclusion is established. If the alleged father is financially unable to pay for the costs of a test, the court may direct any qualified public health officer to conduct such test, if practicable; otherwise, the court may direct payment from its own funds where the child is not and is not likely to be a public charge or from the funds of the public welfare officer where the child is or is likely to be a public charge.”
*475 Clearly the court must order a blood grouping test if requested by any party. A blood grouping test is a substantial right since a blood grouping test exclusion conclusively demonstrates nonpaternity. (Matter of Linda "RR” v Brent "SS”, 40 AD2d 908; Matter of Schleimer v Swann, 93 Misc 2d 520.) However, it must be emphasized that section 532 does not indicate that any specific test should be conducted, nor does it provide that a second blood grouping test must be ordered at the request of a party. The language used in section 532, "a blood test” and the court "shall order * * * to submit to one or more blood grouping tests” (underscoring added), clearly implies that these areas are left to the court’s discretion.
The cost of the HLA test is estimated by respondent to be approximately $500, five times the cost of the standard red cell blood grouping test. It is clear that the burden to be borne by public assistance would become insurmountable if the cost of a second blood grouping test was paid by the county at the request of each respondent in a paternity proceeding who was not excluded by the standard test. Judicial notice is taken of this court’s official records which indicate that 1,416 paternity petitions were filed in Westchester County Family Court in 1978 and 1,190 were filed in 1979. While many of the proceedings did not involve a blood grouping test, it is readily apparent that if the county were held responsible for the additional expense of the HLA test in each case where a respondent claimed he was unable to pay this substantial expense, the potential liability to the public purse would be enormous.
A party’s right to demand that one or more than one of the several different blood grouping tests which are now available because of scientific advances be conducted, and the question as to the responsibility of local governments to assume the potential financial burden of the costs of these different tests are State-wide issues which should be addressed by the State Legislature. These issues can be expected to arise with increasing frequency as the public knowledge of the availability of the various tests increases.
While this court agrees with the general proposition that one major purpose of paternity proceedings is to shift the burden of support of the child from the State to the putative father, it cannot agree that additional blood tests are valuable in protecting the public from "collusion between a respondent with 'empty pockets’ and a person in need of public assist *476 anee”. (Lascaris v Lardeo, 100 Misc 2d, at p 227.) The practical experience of this court indicates that the likelihood of undiscovered collusion between the parties is remote. When weighed against the issues involved in routinely ordering a second blood grouping test, the problem of undiscovered collusion is negligible.
The court recognizes that situations may arise involving special circumstances, such as the inability of a respondent to testify because of a mental defect or disorder or a dispute over the results of a single blood grouping test, where, in the interest of justice, the value of a second blood grouping test is enhanced to the point that it should be conducted.
However, a respondent’s due process rights are not infringed by a denial of a second blood grouping test since a respondent is afforded the opportunity of a full evidentiary hearing at which time petitioner has the burden of establishing paternity by a clear and convincing evidence entirely satisfactory to the court. (Matter of Lopez v Sanchez, 34 NY2d 662; Matter of Renee K. v Robert P., 50 AD2d 604.)
The instant case falls within the "special circumstances” category. Respondent was 14 years old when the alleged act of conception occurred and a substantial period of time has elapsed since the filing of the petition. In view of respondent’s age and the fact that this proceeding has been delayed for an extended period because of unforeseen delays in conducting the blood grouping test and because of intermediary proceedings, a second blood test is appropriate.
Respondent paid the cost of the initial blood grouping test. He now argues that because the cost of the HLA test is substantial, the county should bear the expense.
Section 532 of the Family Court Act requires that the respondent show that he is "financially unable to pay for the costs of a test” in order for the court to direct payment from public funds. In the single reported decision dealing with this issue, the method for determination of this factual issue has been held, by the Family Court of Onondaga County, to be the addition of the respondent’s income and readily available assets minus his debts and the living expenses of the respondent and his dependents. (Matter of Commissioner of Social Servs. of County of Onondaga v Jay, 82 Misc 2d 1094.) Since respondent is a minor, his parents are responsible for his financial needs. (Family Ct Act, §§ 413, 414.)
Where respondent has agreed to pay for the first test *477 which was conducted, this court has no authority to order that the county pay the cost of a second blood grouping test when there is no allegation that the first test was inaccurate or improperly conducted and is the same test uniformly administered to all parties, whether or not at public expense, without first determining respondent’s ability or inability to pay for the second test.
Accordingly, respondent’s motion is granted in part and denied in part. The portion of the motion seeking the HLA blood grouping test is granted and petitioner and the child are to submit to the performance of a HLA blood grouping test to be arranged by respondent at a mutually convenient time and place where such test is available, but in no event later than four weeks from the entry of this decision and order.
The portion of the motion seeking payment by the county of the cost of the aforesaid test is denied with leave to move, within 10 days of receipt of this decision and order, for a hearing on respondent’s ability to pay the cost of the HLA blood grouping test.