387 So.2d 465 (1980)
Miles Edward CARLYON, Appellant,
v.
Jean Wiggins WEEKS, Appellee.
No. PP-99.
District Court of Appeal of Florida, First District.
August 19, 1980.
Martin Sack, Jr., Jacksonville, for appellant.
Gary A. Benson, Jacksonville, for appellee.
MILLS, Chief Judge.
This is an appeal and cross-appeal from a final judgment entered in a paternity case after a jury trial. Carlyon challenges the trial court's order requiring him to submit to blood testing and the evidentiary rulings permitting the publication of the doctor's deposition and allowing into evidence the written report of the blood testing. We affirm.
Weeks brought suit against Carlyon to establish paternity of a child born to her. She arranged to have blood tests performed at Shands Teaching Hospital in Gainesville at her expense and it appears that Carlyon agreed to undergo the blood tests. He *466 failed to appear at the scheduled time and subsequently the court ordered him to submit to the blood testing. He did not object to the blood test. At the time the question of the blood testing was under consideration, Weeks submitted to the court a statement from Dr. Sally E. Ryden, Medical Director of the Blood Bank at Shands, concerning the particular new test which was to be used. This test was called Human Leukocyte Antigen (HLA) Testing. The statement asserted:
Paternity can be excluded with certainty in certain cases by blood testing, but it can never be proven with certainty. Using the methods described above, we can exclude paternity in 80-90% of cases where the putative father is indeed not the father. If paternity is not excluded, one can calculate a likelihood of paternity. However, any figure so calculated is approximate rather than exact, since it is derived from frequency statistics.
The motion for examination urged that the test was relevant and probative to the determination of paternity in the action. The court ordered the examination.
After the blood testing was carried out, Carlyon filed a motion in limine to exclude the report and deposition of Dr. Ryden. The trial court denied the motion. The objections to the report and deposition were renewed at trial and overruled.
Dr. Ryden testified that the traditional red blood cell tests could be used only to exclude paternity. They would exclude a wrongfully accused man 55-60% of the time. Unless there were a particularly rare red cell group involved, however, no meaningful probability of paternity could be established. In her opinion, as supported by cited medical authority, one would have to achieve a probability factor of 80% before it would be considered meaningful.
The HLA test is a new test which is performed on white blood cells. It is essentially a tissue-typing test which can be performed on, for example, lymph or spleen tissues as well as white blood cells. The HLA test was developed and used primarily in organ transplanting for purposes of determining if organs from a donor would be accepted or rejected by the possible recipient.
The accuracy of HLA testing alone for determining a probability of paternity generally is 78-80%. Used as it was here in conjunction with red blood cell testing, the level of accuracy is over 90%. The eight tests used in this case are the tests recommended by the Joint AMA-ABA Guidelines published in the Family Law Quarterly, Vol. X, No. 3 (Fall 1976).
Regarding the specific test results applicable to Carlyon, the report stated:
Miles Edward Carlyon ... is not excluded from paternity... . The odds that a random white man rather than Miles is the father of Ashton are 1194 to 1. Stated another way, the plausibility of paternity from Miles is 99.9%, making paternity "practically proved" in the terminology of Hummel.
In addition to the testimony and report of Dr. Ryden, Weeks submitted an appendix to her memorandum of law. It included, among other things, the following law review and journal articles for the judge's consideration:
Shaw and Kass, "Illegitimacy, Child Support, and Paternity Testing," 13 Houston L. Rev. 41 (1975).
Terasaki, "The Legal Implications of HLA Testing for Paternity" and a forward to "Resolution by HLA Testing of 1,000 Paternity Cases Not Excluded by ABO Testing," 16 J. of Family Law 537, 543 (1977-78).
Terasaki, et al., "Twins with Two Different Fathers Identified by HLA," 299 The New England J. Of Med. 590 (1978).
Beautyman, "Paternity Actions  A Matter of Opinion Or a Trial of Blood?" 4 J. of Legal Med. 17 (1976).
Carlyon's entire argument concerning the issues raised here rests on the case Simons v. Jorg, 375 So.2d 288 (Fla.2d DCA 1979). In that case, the Second DCA granted a petition for writ of certiorari and quashed a trial court order that the defendant in a paternity action submit to blood testing on *467 the grounds that Rule 1.360, Fla.R.Civ.P., requires a showing of good cause before a party can be ordered to submit to physical examination. In making that ruling, the court stated in its original opinion that the results of blood grouping tests excluding paternity are admissible, but tests failing to exclude paternity are inadmissible, citing 4 Fla.Jur., Bastards, § 25, N. 14; 10 Am.Jur.2d Bastards, § 118.
Chief Judge Grimes specially concurred on the basis that he could envision a case where the blood type evidence might be admissible, but concurred because of the failure to show good cause for the testing. He noted that if the Human Leukocyte Antigen test is a new type of test to demonstrate the identity of the putative father, the respondent failed to submit any evidentiary support of that fact.
After the original opinion was issued, the Department of Health and Rehabilitative Services filed a motion for leave to appear as amicus curiae so that it could explain to the court information about the Human Leukocyte Antigen testing. The court denied the motion, stating:
Needless to say, we have no knowledge of the virtues of Human Leukocyte Antigen typing, and there was no evidence on this subject before the court below at the time its order requiring a blood test was entered. The holding expressed in our opinion is simply that no good cause was shown by respondent to compel the test. Our statements on the admissibility of evidence of blood tests reflect the current law applicable to the traditional blood grouping tests. Whether the Human Leukocyte Antigen test is so accurate as to be relevant evidence to prove paternity is not before us, and no purpose would be served to permit HRS to appear at this late stage in this certiorari proceeding. (375 So.2d at 290).
The ruling of the Second DCA is limited to a situation where no good cause is shown for an examination by blood testing. See Simons v. Jorg, 384 So.2d 1362 (Fla.2d DCA 1980) where the court denied a petition for writ of certiorari challenging a discovery order compelling the putative father to submit to the HLA blood test.
The record in this case comes to us in an entirely different posture than that in the 1979 Simon v. Jorg case. Carlyon has not preserved his challenge to the trial court's order that he submit to the blood testing. He did not object to the order before, during, or after the trial. The court's requirement that Carlyon submit to the blood testing was not cited as error in his motion for new trial. Since this point has not been preserved, we decline to rule on it.
The question of whether the deposition of the doctor who performed the blood testing and the written report of the blood testing should have been admitted as evidence at the trial where the testing involved included the Human Leukocyte Antigen test has not been decided in Florida. We recognize that the general rule in Florida has been, as noted above, that blood tests which exclude paternity are admissible but that blood tests cannot be used to establish paternity. That rule was developed and applied to the traditional red blood cell tests and was based on the relative accuracy of those tests.
The doors and minds of the courts need not be closed and remain closed to developing scientific and medical knowledge. See Yarmark v. Strickland, 193 So.2d 212 (Fla.3d DCA 1967). The likelihood of the admissibility of the HLA tests was discussed in a relatively recent Florida CLE publication, Ptomey and Carlton, "Paternity," Adoption, Paternity and other Florida Family Practice 115 (The Florida Bar Continuing Legal Education (1979). The tests have been found admissible in California, Cramer v. Morrison, 88 Cal. App.3d 873, 153 Cal. Rptr. 865 (4th DCA 1979) and such tests have been compelled in a paternity dispute in New Jersey, Malvasi v. Malvasi, 167 N.J. Super. 513, 401 A.2d 279 (Ch. Div. 1979). A New York court has expressed concern that an HLA test, a "widely recognized scientific test" and a "competent scientific test," would have to be ruled inadmissible because of a statutory exclusion. Goodrich v. Norman, *468 100 Misc.2d 33, 421 N.Y.S.2d 285 (N.Y. Fam. Ct. 1979).
The predicate required by the trial court concerning the degree of reliability and validity of the blood tests performed was sufficient to establish that the results were probative on the issue of paternity. The rulings of the trial court on the admissibility of the report and deposition were within the trial court's discretion.
Carlyon also challenges another evidentiary ruling which need not be discussed, for we find it to be without merit.
We reject Weeks' challenge to the amount of the award of attorney's fee which is authorized by Section 742.031, Florida Statutes (1973). We find that the factors considered by the judge were proper and the amount awarded was reasonable.
AFFIRMED.
SHIVERS, J., and WOODIE A. LILES (Ret.), Associate Judge, concur.