429 A.2d 1162

**In re Paternity of Jeffrey MENGEL.**

**James McGARRITY**

v.

**Kathy MENGEL.**

**Appeal of James McGARRITY.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1980.
Filed May 15, 1981.

188

James McGarrity, Norristown, appellant, in pro. per.

Allan Greenwood, Phoenixville, did not file a brief on behalf of appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

Appellant filed a petition seeking a declaratory judgment of whether he is the father of the child, Jeffrey. He asked that the court order blood tests to be taken to make this determination and that other appropriate relief be granted if he is found to be the father. He alleged that it is physically possible that he is the boy's father and that the appellee, the mother, so claimed prior to Jeffrey's birth. Preliminary objections to his petition were sustained and it was dismissed.

The central issue before us is whether appellant has standing to obtain the relief he seeks through a petition of declaratory judgment. The lower court found that he did not. We disagree and therefore reverse the decision of the lower court and remand for further proceedings.

█ Standing requires an aggrieved party to show a substantial, direct and immediate interest in the subject matter of the litigation. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). In *Administrative Law*, Kenneth Culp Davis explained the essential element of the standing concept. He wrote: "Every issue of standing, . . ., involves the basically simple problem of whether or not petitioner's asserted interest is in the circumstances deserving of legal protection." K. C. Davis, *Administrative Law*, (1951) at 714.[1]

The United States Supreme Court has held that an unwed father has a cognizable and substantial interest in obtaining custody of his children and that this interest is deserving of protection. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). See: *State ex rel. Rothstein v. Lutheran Social Services* (Memorandum Opinion), 405 U.S. 1051, 92 S.Ct. 1488, 31 L.Ed.2d 786 (1972).

This court has recognized the rights of unwed fathers. In the case of *Commonwealth ex rel. Peterson v. Hayes*, 252 Pa.Super. 487, 381 A.2d 1311 (1977), we held that whether an unwed father should have visitation rights is to be decided by the same standard as is applied in the case of legitimate children.

We wrote:

In *Stanley v. Illinois*, 405 U.S. 645, 652, 92 S.Ct. 1208 [1213], 31 L.Ed.2d 551 (1972), it was held that the interest of a father in his illegitimate child was "cognizable and substantial." Id., 252 Pa.Super. at 492, 381 A.2d at 1314. . . . It is only the father of an illegitimate child who has been relegated to a secondary position. To the

1. While this book is about administrative law, we believe that Mr. Davis' definition applies equally well to the judicial system and clarifies the issue before us.

extent that this secondary position depends on the traditional differentiation between the roles of a mother and a father it can no longer be accepted or enforced. Id., 252 Pa.Super. at 491, 381 A.2d at 1313.

In *Adoption of Walker*, 468 Pa. 165, 360 A.2d 603 (1976), our Supreme Court held that unwed fathers have the right to contest the adoption of their children.

Inheritance rights of unwed fathers are provided in Title 20 P.S. § 2107 which provides:

(c) Child of father.—For purposes of descent by, from and through a person born out of wedlock, he shall be considered the child of his father when the identity of the father has been determined in any one of the following ways:

(1) If the parents of the child born out of wedlock shall have married each other.

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child out to be his and provides support for the child which shall be determined by clear and convincing evidence.

(3) If there is clear and convincing evidence that the man was the father of the child, which may include a prior court determination of paternity.

As amended 1978, Nov. 26, P.L. 1269, No. 303, § 1, imd. effective.[2]

Appellant argues that he has standing to obtain a declaratory judgment and the supplemental relief he seeks because a determination that he is the child's father would confer upon him the rights that accrue from paternity. He refers to inheritance rights and to his right to contest the adoption of a child found to be his as illustrative of the fact that an unwed father has rights with respect to his children.

2. See also: *A.B. v. C.D.*, 150 Ind.App. 535, 277 N.E.2d 599 (1971) in which the Indiana Court found that the expectancy as an heir apparent is a present interest sufficient to maintain a declaratory judgment action to determine paternity.

■ As we have seen, unwed fathers do have the rights to which appellant refers. Those rights create a substantial, direct and immediate interest in the determination that one is the father of a child. Appellant seeks protection of those rights via a declaratory judgment action. Section 7531 of the Declaratory Judgments Act [3] provides that:

Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

What appellant seeks to establish is his status as parent, his legal relation to the child and the protection of those rights that accrue from this relationship.

While we find no case in Pennsylvania in which a putative father has used declaratory judgment proceedings to determine paternity, declaratory judgment proceedings have been utilized in Pennsylvania to determine parentage and legitimacy. See *Liddick v. Louden*, 52 D & C 402 (1945), *Spencer v. Spencer*, 47 D & C 192 (1942).

Section 7541 of the Declaratory Judgments Act states in relevant part:

§ 7541.  Construction of subchapter.

(a) General rule.—This subchapter is declared to be remedial.  Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, *and is to be liberally construed and administered.*  (Emphasis added.)

■ Section 7537 of the Act is entitled "Remedy Discretionary."  A 1976 amendment essentially reenacts the original language of the Pennsylvania statute and the Uniform Act.[4]  The section clearly limits the discretion that can be

**3.** Act of July 9, 1976, P.L. 586, No. 142 § 2; 42 Pa.C.S.A. § 7531, et seq.

**4.** Act of April 25, 1935, P.L. 72 § 1 and Act of May 26, 1943, P.L. 645 § 1 amended former 12 P.S. 836.  That section was again amended by the Act of July 9, 1976, P.L. 586, No. 142 § 2; 42 Pa.C.S.A. § 7537 which reenacted the language of the 1923 Act and additionally

exercised by a court in deciding whether to grant the remedy of a declaratory judgment. This court discussed the section in the case of *Melnick v. Melnick*, 147 Pa.Super. 564, 25 A.2d 111 (1942) where we wrote:

It will be noted that ... the original act ... [does not give] the court discretion in the meaning of "freedom to act or decide" as to whether it may render or refuse to render a declaratory judgment. *The original act merely authorized the court to refuse to render a judgment, where such judgment would not terminate the controversy or uncertainty giving rise to the proceeding.* (Emphasis added.) Id., 147 Pa.Super. at 570, 571, 25 A.2d at 114, 115.

As the court explained in a footnote in *Melnick*, supra: Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the court to follow it. (citing cases) *Id.*, 147 Pa.Super. at 570, 25 A.2d at 114, 115.

Granting a declaratory judgment in this case would terminate the uncertainty that gave rise to the proceeding. Sections 7536 and 7537 explain that a declaratory judgment is appropriate in proceedings in which the judgment will terminate uncertainty. The sections limit the discretion that can be exercised by the courts in administering this law.

Our research has revealed no Pennsylvania decision dealing with the question before us. However, we have found the decisions of other jurisdictions helpful in determining if appellant has standing to obtain a declaratory judgment. Those decisions come from states which have enacted the Uniform Declaratory Judgments Act from which our statute is, in most part, derived.

In 1978, the Supreme Judicial Court of Maine held the case of *Johannesen v. Pfeiffer*, 387 A.2d 1113 (1978) that a putative father could maintain a declaratory judgment ac-

provided that "the existence of an alternative remedy shall not be a ground for the refusal to proceed under this subchapter."

tion to determine if he is the father of an illegitimate child. In explaining that a putative father has rights which he is entitled to protect, the court discussed the rights which appellant contends entitle him to relief. The Maine court held that inheritance rights and the right to contest adoption are rights which give a putative father standing to seek a declaratory judgment of his paternity.

After discussing the adoption and inheritance rights of an unwed father, the *Johannesen* court wrote:

We need not decide at this point what other rights with respect to the child appellant would be entitled to assert if he established paternity. It is now clear that unwed fathers have important interests in their offspring that are entitled to constitutional protection. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The *Stanley* decision and subsequent cases suggest that a putative father has a constitutional right to a forum to establish paternity. (Citing cases.)
Id. at 1114.

and, earlier in the opinion,

. . . To protect any rights he may have under that statute [adoption], a putative father should be permitted to have his status as parent established while evidence of his paternity is still available even though the mother has not yet begun adoption proceedings. *Johannesen v. Pfeiffer*, Me., 387 A.2d 1113 (1978). Id. at 1114.

In *Slawek v. Stroh*, 62 Wis.2d 295, 215 N.W.2d 9 (1974). The Wisconsin Supreme Court held that a declaratory judgment action was a proper means by which a putative father can seek a determination of his paternity.

The court wrote that in Wisconsin,
The only specific statutory procedure for establishing the parentage of illegitimate children and making provision for their care, custody and maintenance appears in [a chapter dealing] with the broad problem of the support of dependents.
Id. at 304, 215 N.W.2d at 15.

... Two recent cases, among others, *Stanley v. Illinois*, (1972) 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 and *State ex rel. Lewis v. Lutheran Social Services*, (1973) 59 Wis.2d 1, 207 N.W.2d 826, in effect, recognized that fathers, including putative fathers, do have the right to establish they are a natural parent and, as such, have some parental right and duties.

Id. at 303, 215 N.W.2d at 14. See also: *A.B. v. C.D.*, 150 Ind.App. 535, 277 N.E.2d 599 (1971); *Kendrick v. Everheart*, Fla., 390 So.2d 53 (1980).

Because a support action was not available to the putative father in *Slawek*, the court determined that some other procedure must be available to him to assert the constitutional right to establish his natural parentage. The Declaratory Judgments Act was found to provide that procedure.

Pennsylvania also has a statute relating to support pursuant to which paternity can be determined.[5] Section 6767 of the Act, entitled "Paternity" provides for such an adjudication in support actions.

■ As was the case in *Slawek*, that statute provides no aid to appellant. In the instant case, Jeffrey's mother has custody of him and supports him. Appellant is not in a position to institute proceedings under the Support Act. The institution of such an action is available only to appellee, or one who has custody of the child.

It is important to note that even if appellant could obtain an adjudication of his paternity in a support action, the availability of such a remedy is no longer a bar to the granting of a declaratory judgment.

Section 7541(b) of the Declaratory Judgments Act provides:

(b) Effect of alternative remedy.—*The General Assembly finds and determines that the principle rendering declaratory relief unavailable in circumstances where an action at law or in equity or a special statutory remedy is*

5. "Revised Uniform Reciprocal Enforcement of Support Act (1968)." Act of July 9, 1976, P.L. 586, No. 142 § 2; 42 Pa.C.S.A. § 6741 et seq.

*available has unreasonably limited the availability of declaratory relief and such principle is hereby abolished.* The availability of declaratory relief shall not be limited by the provisions of 1 Pa.C.S. § 1504 (relating to statutory remedy preferred over common law) and *the remedy provided by this subchapter shall be additional and cumulative to all other available remedies except as provided in subsection (c).* Where another remedy is available the election of the declaratory judgment remedy rather than another available remedy shall not affect the substantive rights of the parties, and the court may pursuant to general rules change venue, require additional pleadings, fix the order of discovery and proof, and take such other action as may be required in the interest of justice. (Emphasis added.)

None of the exceptions found in subsection (c) apply to this case.

As most recently amended, the statute also provides in Section 7537 that "*the existence of an alternative remedy shall not be a ground for the refusal to proceed under this subchapter.*" (Emphasis added.)

Even if the issue of his paternity might be raised in another type of action, such as one to amend the child's birth certificate, or, as the trial court suggested, one to get visitation rights, appellant can still seek a declaratory judgment of his paternity.

■ Having determined that appellant has standing to obtain a declaratory judgment of his paternity, we come to his contention that his petition asserting the "possibility" of paternity is sufficient. It is not.

The controversy is as to whether appellant is the child's father. The declaration that appellant is the "possible" father of Jeffrey does not end the uncertainty as to whether he is the boy's father. The petition should allege paternity, not the *possibility* of it, which is not at issue.

Finally, we come to appellant's request that the trial court order blood tests to determine the paternity question.

The Uniform Act on Blood Tests to Determine Paternity [6] Section 6131 of the Act provides that it applies to all civil matters. A declaratory judgment is a civil action. See: Section 7539 of the Declaratory Judgments Act.

The Uniform Act on Blood Tests to Determine Paternity provides:

> *In any matter subject to this subchapter in which paternity, parentage or identity of a child is a relevant fact,* the court upon its own initiative or upon suggestion made by or on behalf of any person whose blood is involved may, *or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests.* If any party refuses to submit to such tests, the court may resolve the question of paternity, parentage or identity of a child against such party, or enforce its order if the rights of others and the interests of justice so require. (Emphasis added.) Section 6133.

■ The lower court was directed by the aforesaid statute to order blood tests of the mother, child and appellant, who is the alleged father.

■ Appellant has standing to seek a declaratory judgment and obtain other appropriate relief because of the rights that accrue to him as an unwed father, if he is found to be such. Because he has standing to bring the action, he also has standing to request the ordering of blood tests. Since the motion comes from a party to the action, the trial court must order the tests.

■ Appellant asks that "any other person who could possibly be the father" be joined in this action and blood tests performed upon him, if the results of appellant's blood test do not exclude the possibility of his being Jeffrey's father. The court lacks authority to make such an order.

Section 7540 of the Declaratory Judgments Act provides:

6. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 6131 et seq.

All persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

The only persons whose rights are affected by the present action are the mother, child and appellant. This is an action to determine if appellant is the boy's father; it is not one to determine who is the father if appellant is not. If the judgment is that appellant is Jeffrey's father, then none of the other possible fathers to whom appellant refers had any rights with respect to the child, for none of them is his father. On the other hand, if the judgment is that appellant is not the father, then the rights of the biological father are intact and unaffected by this proceeding.

No one else is properly joined in this action. The Uniform Act on Blood Tests to Determine Paternity therefore provides authority only for tests on appellee, the child and appellant, who is the only alleged father in the present action.

We reverse the order of the lower court and remand for declaratory judgment proceedings to determine whether appellant is Jeffrey's father. Blood tests are to be ordered in accordance with the provisions of the Uniform Act on Blood Tests to Determine Paternity.

SPAETH, J., files concurring opinion.

HOFFMAN, J., joins in both opinions.

SPAETH, Judge, concurring:

I join the majority in its explanation of why appellant has standing to seek a declaratory judgment as to whether he is or is not the father of Jeffrey. I write separately only to add the following observations.

–1–

The majority says that appellant must allege the *fact* rather than the *possibility* of paternity. At 1163. Strictly speaking we need not reach this issue because appellant

amended his petition in the lower court to add an allegation that he is the father. N.T. 14–16. However, given the majority's statement, I wish to note that in my opinion, appellant's original petition was sufficient.

Although it has not always been so, it is now clear that a declaratory judgment action may be brought to determine a question of fact as well as a question of law. The Supreme Court has so held, *Liberty Mutual Insurance Company v. S.G.S. Company*, 456 Pa. 94, 318 A.2d 906 (1974); *Friestad v. Travelers Indemnity Co.*, 452 Pa. 417, 306 A.2d 295 (1973), and this holding has been codified in the new Declaratory Judgments Act, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 7539(a). *See,* Declaratory Judgments, Explanatory Note—1979, preceding Pa.R.C.P. 1601.

Declaratory judgment actions are governed by the Rules of Civil Procedure, which require the pleading of facts. Pa.R.C.P. 1601(a), 1501, 1019(a). Appellant's original petition did plead facts.[1] These facts, however, were not such as

1. The relevant paragraphs of appellant's original petition are as follows:

1. The Petitioner is James McGarrity, an adult individual residing at 900 DeKalb Street, Norristown, PA.

2. The Respondent, Kathy Mengel, is, and was at all times material hereto, an unmarried adult residing at 2036 Bayless Place, Norristown, PA.

3. Jeffrey Mengel is an infant residing with his mother at 2036 Bayless Place, Norristown, PA.

4. Jeffrey Mengel is the child of Respondent and was born on December 29, 1979.

5. Upon information and belief, no father was named on Jeffrey's Birth Certificate, the Respondent has not named anyone as the father since birth, and no one has acknowledged paternity of the boy.

6. The Petitioner has sufficient contact with the Respondent in March and April to make it Physically possible that he is Jeffrey's father.

7. From last April until mid-December the Respondent claimed that petitioner was the only possible father of her child.

8. During that time, Respondent held out Petitioner as father of her child to family and friends.

9. During that time, Respondent claimed that Petitioner was father of her child under circumstances that made no sense to so claim unless Petitioner was the father.

to enable petitioner to know that he *is* the father of Jeffrey, but only that he very well *may* be. For the majority to say that nevertheless, appellant must plead that he is the father amounts to instructing a litigant that he must plead as fact something that he is uncertain about and that he believes may *not* be fact. This instruction is inconsistent with the philosophy underlying our system of fact pleading—that an honest statement of the issues should be required at the pleading stage. It is also an unnecessary instruction, for appellant's uncertainty is, without more, sufficient to give him standing to maintain an action. One who is a father has legal rights and obligations regarding his child. Appellant is therefore entitled to know whether he is the father of Jeffrey and as such, has those rights and obligations. *See* majority op. at 1164–1165.

The cases cited by appellant and the majority are different from this case, for in them paternity was not an issue; in other words, the actions were not to resolve an issue about which the petitioner was uncertain. Thus in *A.B. v. C.D.*, 150 Ind.App. 535, 277 N.E.2d 599 (1971), it was not disputed that the plaintiff was in fact the father. The issue was whether he could be legally recognized as the father, given that the child was born to his wife while she had been married to another man. The issue was much the same in *Kendrick v. Everheart*, 390 So.2d 53 (Fla.1980). And in *Slawek v. Stroh*, 62 Wis.2d 295, 215 N.W.2d 9 (1974), the mother, who was not married when the child was born, admitted that the petitioner was the father but disputed his right to a legal relationship with the child.

–2–

I agree with the majority that the lower court does not have the authority to require anyone other than appellant, appellee, and Jeffrey to submit to blood tests. Majority op.

10. Shortly before Jeffrey's birth, Respondent told Petitioner that he was not the father of her child and refused, and continues to refuse, to discuss the paternity other than to say an unnamed married individual is the father.

11. Respondent has refused to voluntarily submit to any tests to determine the paternity of her child.

at 1168. I am unable to agree, however, with the majority's statement that "[i]f the judgment is that appellant is Jeffrey's father, then none of the other possible fathers to whom appellant refers had any rights with respect to the child . . . ." *Id.* at 1168.

The Declaratory Judgments Act provides that "no declaration shall prejudice the rights of persons not parties to the proceeding." 42 Pa.C.S.A. § 7540. Suppose that on remand the lower court determines on the basis of the evidence, including the results of the blood tests, that appellant is the father of Jeffrey, but that despite that determination, another man files a declaratory judgment action alleging that he could be the father. It seems to me that the other man's action will have to be heard, and that a finding of paternity in the present action will not be *res judicata* or otherwise a bar, as the majority suggests. Given this perhaps unlikely but nevertheless troubling possibility, I think we should be specific regarding the sort of blood tests we have in mind.

The many states by statute the results of blood tests are admissible only when they serve to exclude a man as the father. *See, e. g.,* Ark.Stats. 34–705.1. The reasoning is that when the tests do not exclude the man as the father, it does not follow that he is the father; although not excluded by the tests, he may nevertheless still not be the father. However, modern techniques, in particular human leukocyte antigen testing, often referred to as "HLA," greatly increase the probability of exclusion. *See Carlyon v. Weeks,* 387 So.2d 465 (Fla.Dist.Ct.App.1980), and the scientific authorities cited therein.

No Pennsylvania appellate decision has addressed the admissibility of the results of HLA tests. In *Commonwealth ex rel. Atkins v. Singleton,* 282 Pa.Super. 390, 422 A.2d 1347 (1980), the results of HLA tests had been admitted by the lower court. The majority did not reach the issue of the admissibility of the results. The dissenting opinion assumed they were admissible but did not specifically discuss their use to help establish, rather than exclude, the possibility of paternity. *Id.,* 282 Pa.Super. at 805, 422 A.2d at 1355 (BROSKY, J., dissenting).

The Pennsylvania version of the Uniform Act on Blood Tests to Determine Paternity, 42 Pa.C.S.A. § 6131 *et seq.*, does not contain the language found in the statutes of some states restricting the use of blood tests to exclude a man as the father. I therefore conclude that the statute should not be construed as limiting the admissibility of the result of blood tests to cases in which the results exclude a man as the father. It seems to me to follow from this conclusion that on remand, we should instruct the lower court to order blood tests of appellant, appellee, and Jeffrey, including HLA tests, if other tests have not excluded appellant. *See* Joint AMA–ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage, 10 Fam.L.Q. 247, 256 (1976). If the results of the tests are to exclude appellant as the father of Jeffrey, the court should resolve the issue of paternity accordingly, as a matter of law. 42 Pa.C.S.A. § 6136. If the results of the tests do not exclude appellant as the father, still the court should consider the results of the tests along with all the other evidence. *See, Cramer v. Morrison,* 88 Cal.App.3d 873, 153 Cal.Rptr. 865 (1979); Shaw & Kass, "Illegitimacy, Child Support, and Paternity Testing," 13 Houston L.Rev. 41, 60 (1975). With HLA testing it is possible for the probability of exclusion to exceed 98 per cent. *See Carlyon v. Weeks, supra; Tuinstra v. Chorley,* 7 Fam.L.R. 2069 (Mich.Cir.Ct. Nov. 5, 1980) (when probability of accuracy of blood test in establishing paternity approaches 98 per cent, result of test is admissible as "relevant evidence" even in face of statute limiting blood tests to exclusion of paternity).

–3–

Finally, I wish to acknowledge explicitly a conclusion that is implied by our holding in this case, and by the constitutional principles and statutory authority on which our holding rests, *see* majority op. at 1164–1165.

Since a man has rights, which will be legally protected, incident to his status as father of a child, and not just obligations, such as support, which will be enforced only at the initiative of the mother or the state, it must follow that

an unmarried woman does not have the unqualified right to refuse to cooperate in legal proceedings intended to determine the paternity of her child. I recognize, as did the lower court, that this conclusion may result in some intrusion on a woman's privacy. *See* lower court slip op. at 3. Nevertheless, in a case such as this one, that interest must yield.

With these additional considerations I join the opinion of the majority.