## Commonwealth v. Macbeth

*Janet Moschetta,* for plaintiff.
*Sanford S. Finder,* for defendant.

SWEET, *P.J.,* April 8, 1982 — 42 Pa.C.S.A. §6136 says this:

"If the court finds that the conclusions of all the experts as disclosed by the evidence based upon the tests are that the alleged father is not the father of the child, the question of paternity, parentage or identity of a child shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence."

This presents to us the question of whether the

testimony of the expert concerning the outcome of a so-called Human Leucocyte Antigen test shall be admitted into evidence when it *includes* defendant as being the father. Defendant's brief puts it this way: "The issue in this case is simply whether or not the blood test is admissible for the purpose of establishing the inclusion of a person as a parent rather than the exclusion."

In our case, defendant expressly is not standing on the issue of the absence of the witness for cross examination. This was addressed in Valentine v. Strongel, 246 Pa. Superior Ct. 466, 371 A. 2d 931 (1977) by the Superior Court. Mr. Finder, being very decent about this matter, says that he would not insist that either client spend $500 for a deposition only to have me rule it inadmissible.

Let us assume for the rest of this opinion that the attorney for the prosecutrix has offered proof that the HLA test shows that defendant has a 99+ probability of being the father. The purpose of this exercise today is to ascertain if I will allow him to be called to testify to something very much like that or if I would exclude such evidence. I am not going to make the lawyers bet $500 on how the ruling will be and now advise them accordingly in advance of the next hearing.

The Superior Court had an excellent chance to decide this in Valentine v. Strongel, supra, and carefully chose not to in 1977. It is plain to me therefore, that they are awaiting an appropriate case upon which to decide this. Thus, if I admit the HLA test affirmatively and am wrong, error will have been committed. If I admit it into evidence and the decision is affirmed, an appropriate precedent will have been created.

California apparently would approve of what I'm

doing here. The Cramer case[1] says in footnote no. 2 on page 867 thereof: "The motion in limine for a ruling on the admissibility of evidence has been recognized as an appropriate way of resolving the issue of admissibility, particularly where it relates to the admissibility of an opinion of an expert on a material issue in the case."

I do not believe that the cases of Goldman v. Goldman, 199 Pa. Superior Ct. 274, 184 A. 2d 351 (1962) and Heller v. Bush, 13 D. & C. 3d 506 (1980) deal with this question.

In studying this problem I have considered the Joint AMA-ABA Guidelines: Present Status of Serologic Testing In Problems of Disputed Parentage. This is a 1976 publication and it specifically mentions the HLA test. The Bar Association study (p. 277) says:

"Fortunately, the current data commonly allows for the ready identification of antigen frequencies after serologic identification using lymphocytotoxicity tests. Using antigen frequencies, it is impossible to determine the likelihood that a man in the random population would possess both antigen which have been identified as paternal HLA antigens of the child in question."

Recommendation no. 3 of this study on page 283 says:

It is recommended that steps be taken to obtain such Federal, State, or other support as to enable widespread inclusion of HLA studies in the battery of tests used in cases of disputed parentage. This should include not only making available reliable

1. Cramer v. Morrison, 88 Cal.App. 3d 873, 153 Cal.Rptr. 865 (1979).

HLA antisera but also provisions for education and continuing education."

In Little v. Streater, 452 U.S. 1, 8 (1981), the court stated:

"The joint report recommended the use of seven blood test 'systems' . . . ABO, Rh, MNS, Kell, Duffy, Kidd, and HLA . . . when investigating questions of paternity."

In Little v. Streater on p. 633, the Supreme Court compelled Connecticut to furnish an indigent defendant the same access to blood tests for HLA that was afforded the Commonwealth. This means in Connecticut, at least, the County can be forced to pay for the test under consideration here. This does not necessarily mean it is admissible in evidence; the highest court did not squarely say so. Yet it seems to me unlikely that a court which ordered the payment for the test and authorized the taking of it, would turn around and deny its use in the proceedings at a later stage.

We have considered an article published in The Legal Intelligencer, December 17, 1981. "Nonexclusionary Blood Tests Results: Establishing the Probability of Paternity" by Marvin D. Weintraub. The author is Chief Counsel of the Domestic Relations Branch of the Family Court Division of the Court of Common Pleas of Philadelphia. Weintraub says that, "If the results of the tests do not exclude appellant as the father, still the court should consider the results of the tests along with all the other evidence."

Judge Spaeth wrote a concurring opinion in In re: Mengel, _____ Pa. Superior Ct. _____, 429 A. 2d 1162 1170 (1981)

". . . I therefore conclude that the statute should not

be construed as limiting the admissibility of the result of blood tests to cases in which the results exclude a man as the father. It seems to me to follow from this conclusion that on remand, we should instruct the lower court to order blood tests of. . . ." mother, alleged father and child, ". . . including HLA tests, . . . ."

Robert E. Keith, Assistant Attorney General of the state of Iowa, in a case note[2] says this:

"If the results (of blood tests) indicated a high probability of paternity, it would be anomalous to keep such evidence, requested by the defendant and paid for by the State, from the trier of fact."

In Weintraub's article, supra, we find this statement:

"The majority of states that have statutes that limit the admissibility of blood tests have nevertheless yielded to the overwhelming, scientific reliability of HLA type testing and permit the admission of non-exclusionary results notwithstanding the statutory limitations."

Footnoting this sentence are the states of "Arizona, Florida, Iowa, Massachusetts, Michigan, Minnesota, New Jersey, North Carolina, Oregon, Washington and Wisconsin."

A recent California case, Cramer v. Morrison, supra, from that state's Court of Appeal, speaking through Judge Tamura, Fourth District says this in headnote no. 3:

"Apart from the possibility of exclusion of the Human Leucocyte Antigen test by a specific statute and assuming its general acceptance in the

2. Child Support Report, published by the National Child Support Enforcement Center, a Federal Agency, Volume III, No. 7, July, 1981, page 5, et seq.

scientific community as a reliable test for paternity, results of test are clearly probative and therefore relevant in an action to establish paternity. They have a tendency to prove the fact of paternity which is the central issue is such actions."

On page 869, Judge Tamura also says:

"In our opinion, the drafters of the Uniform Act did not have in mind tests of the nature of the HLA. Initially, the terminology which the statute employs in referring to blood tests — 'blood types' — is that commonly applied to the Landsteiner series of red cell blood grouping tests."[3]

"3. The Landsteiner classification of blood groups and its subsequent improvements are in general use to prove nonpaternity. . . ."

This is the familiar ABO.

Judge Tamura held that the trial court erred in excluding the results of the HLA Test. In other words, the California Court said that the limitation of blood tests, only to exclude dates back to a time when the HLA Test was unknown and is a proper limitation on the ABO Test, not on the HLA.

Let us go back to In re: Mengel, supra, for a moment. Judge Spaeth says: ". . . modern techniques, in particular human leukocyte antigen testing, often referred to as HLA, greatly increase the probability of exclusion." He goes on to cite a Florida case, "and the scientific authorities cited therein." Judge Spaeth also points out that:

"No Pennsylvania appellate decision has addressed the admissibility of the results of HLA tests. In Commonwealth ex rel. Atkins v. Singleton, 422 A. 2d 1347 (1980), the results of HLA tests had been admitted by the lower court. The majority did not reach the issue of the admissibility of the results."

Judge Spaeth also said:

"With HLA testing it is possible for the probability of exclusion to exceed 98 per cent. See Carlyon v. Weeks, supra; Tuinstra v. Chorley, 7 Fam.L.R. 2069 (Mich. Cir. Ct. Nov. 5, 1980) (when probability of accuracy of blood test in establishing paternity approaches 98 per cent, result of test is admissible as 'relevant evidence' even in face of statute limiting blood tests to exclusion of paternity)."

In thinking about this problem it is important to bear in mind constantly, that the ABO test, by its very nature can only operate in an exclusionary way, except very, very broadly, but that the HLA test can operate in an inclusionary way, equally well. I am informed that this test is being used routinely and at public expense for indigents, on the request of either party in Pittsburgh. It is strange that this matter has not been squarely adjudicated.

In opting to use the HLA test affirmatively to point out the father, I realize that I am skipping a step. I am reading the works of the scientists secondhand and have not had testimony under oath of these scientific facts. However, from the opinion of Chief Justice Burger in the Little v. Streater case, supra, p. 633 et seq., I believe this is a matter of which I can take judicial notice, that all intelligent persons now are aware of the efficacy and accuracy of blood tests. Accordingly, I have made the choice here to permit the evidence into the record and to use the same affirmatively if the same is offered by testimony, stipulation of submission of a report coupled with the failure to object to the same.

Accordingly, the lawyers in this case are advised that the evidence will be admitted, if presented or if formal proof is waived.

This does *not* terminate the proceedings but only

rules, perhaps at prolix length, that the evidence of HLA test may be used affirmatively and together with plaintiff's evidence may support a verdict of paternity and a cash order if all else is in due form and sufficient.