355 So.2d 1272 (1978)
North MIAMI GENERAL HOSPITAL, INC., Petitioner,
v.
OFFICE OF COMMUNITY MEDICAL FACILITIES, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES OF THE State of Florida, Respondent.
No. HH-61.
District Court of Appeal of Florida, First District.
March 17, 1978.
*1273 Robert M. Ervin and Robert J. Angerer, of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, Loyd M. Starrett, Barry B. White and Charles J. Beard of Foley, Hoag & Eliot, Boston, Mass., for petitioner.
Eric Hanugdahl, District II Counsel, for respondent.
MASON, ERNEST E. (Circuit Judge, Retired), Associate Judge.
Petitioner, North Miami General Hospital, Inc., hereinafter referred to as the Hospital, has filed its petition for review of the final agency action of the Office of Community Medical Facilities, Department of Health and Rehabilitative Services of the State of Florida, which action determined that the petitioner's proposed purchase of a total body computerized Axial Tomography Scanner (CAT Scanner) would not be favorably recommended to the U.S. Department of Health, Education and Welfare (HEW) for reimbursement for its costs in connection with such purchase, as provided under Section 1122(a) of the Federal Social Security Act.
We have jurisdiction to review such agency action by virtue of Article V, Section 4(b) of the Florida Constitution (1973 Revision of said Article) and Section 120.68, Florida Statutes (1976 Supplement).
In October of 1976, the Hospital, a non-profit Florida corporation, notified the respondent that, pursuant to federal law, it intended to purchase and install a CAT Scanner at a cost of approximately $600,000 and requested respondent's favorable recommendation *1274 to HEW that the latter reimburse the Hospital for certain costs in connection with such purchase.
In January of 1977, respondent, which is the "designated planning agency" for the State of Florida under Section 1122 of the Social Security Act, notified the Hospital that it would not favorably recommend the proposed expenditure to HEW. The Hospital timely appealed the decision and requested a hearing as prescribed by Section 381.494(6)(e), Florida Statutes (1975). A hearing was held in April of 1977 before the hearing officer designated by the Division of Administrative Hearings. In July, the hearing officer filed a recommended order which included findings of fact and conclusions of law. He recommended that petitioner's appeal be denied. His recommended order was adopted by respondent, hence this appeal to this court.
Under the provisions of the Social Security Act, participating health care providers, such as petitioner Hospital, are reimbursed by the Federal Government for their costs for providing certain types of health care services to eligible beneficiaries. To assure that federal funds are not used to support unnecessary capital expenditures made by health care facilities, Section 1122 requires HEW to exclude from reimbursements paid to health care providers expenses related to capital expenditures which exceed $100,000 and which are found by a state's "designated planning agency" not to be:
"... consistent with the standards, criteria or plans developed pursuant to the Public Service Act (or the Mental Retardation Facilities and Community Mental Health Centers Construction Act of 1963) to meet the need for adequate health care facilities in the area covered by the plan or plans so developed" 42 U.S.C.A. § 1320a-1(b).
Pursuant to Section 1122, HEW entered into an agreement with the State of Florida whereby respondent Department was named as the designated planning agency for the State and given final authority to determine whether a proposed capital expenditure was consistent with the State's standards, criteria or plans developed pursuant to the Public Health Service Act of the U.S. Congress (42 U.S.C.A. § 246). Under the agreement, if the Department (respondent herein) finds that a proposed capital expenditure does not conform with such standards, criteria or plans, HEW will not reimburse a health care provider for such capital expenditure.
Under the federal law and the agreement made with the State to determine whether a proposed capital expenditure does or does not conform, the Department is required to utilize the following general criteria:
"(a) Whether the proposed project is needed or projected as necessary to meet the needs in the community in terms of health services required: Provided, that projects for highly specialized services (such as open-heart surgery, renal transplantation, or radiation therapy) which will draw from patient population outside the community in which the project is situated will receive appropriate consideration;
"(b) Whether the proposed project can be adequately staffed and operated when completed;
"(c) Whether the proposed capital expenditure is economically feasible and can be accommodated in the patient charge structure of the health care facility or health maintenance organization without unreasonable increases; and
"(d) Whether the project will foster cost containment or improved quality of care through improved efficiency and productivity, including promotion of cost-effective factors such as ambulatory care, preventive health care services, home health care, and design and construction economies, or through increased competition between different health services delivery systems."
The parties have stipulated that the sole factual issue for consideration was:
"... whether existing CAT-Scan facilities were being sufficiently used to justify the need for an additional scanner in the Miami area."
*1275 Thus, the single issue before the respondent agency was whether there existed a need in the community for petitioner's proposed CAT Scanner. There was no issue, evidence or argument that the proposed purchase would be inconsistent with other criteria.
The Hospital operates a community general hospital licensed for 334 beds with the full range of facilities and services normally provided by general hospitals, and is adequately staffed with specialists in all speciality fields including those specialists and technicians qualified to operate and analyze the results of scans made by this particular type of diagnostic instrumentality and procedure.
The evidence before the hearing officer confirms that next to the discovery of X-ray itself, the CAT Scanner is the most revolutionary development in radiology ever devised, that the use of this scanner to diagnose a patient's illness is safer, less harmful, more accurate and often less costly to use than the more traditional diagnostic procedures it replaces. Furthermore, with a CAT scan many inpatient procedures can be done on a much less costly outpatient basis, thus saving money to the patient and room space in the hospital to service other patients. Finally, in many cases, exploratory surgery can be avoided by the use of a CAT scanner.
Bearing in mind that the sole factual issue before the hearing officer, as stipulated by the parties, was whether, at the time of petitioner's request for approval by the respondent of the purchase of the particular scanner in question, there were existing CAT scan facilities in the community being sufficiently used to justify the need for this additional scanner in the Miami area, our decision must turn upon the question as to whether there was sufficient, competent and substantial evidence before the hearing officer to support his finding of the lack of need for such additional scanner, and the final order of respondent Department adopting the hearing officer's recommended order. The resolution of the issue as to the entitlement of the petitioner to Federal financial aid is therefore community need  not the desire of the Hospital to have such a scanner, nor even its need or convenience of having and using the same.
The record discloses that at the time of petitioner's application, it generally transported its inpatients to Mt. Sinai Hospital  some 12-15 miles away  for CAT scans and that the process of transporting a patient is slow and its cost high. That often nurses and oxygen therapists must accompany the patient. That often three or four days transpire before a written report is received. That often the Hospital must keep a patient in its hospital for two or three days to await the availability of the Mt. Sinai scanner. That in some cases patients who should receive the scans do not because they are too ill to transport. There was also testimony that every hospital with over 300 beds should have its own CAT Scanner to meet community needs. That there are only two CAT scan facilities near the Hospital which do not meet the utilization rate of 2400 scans per year. The Hospital does not refer its patients to them because it questions the accuracy and reliability of their scan results. Respondent did not investigate the reasons for their low utilization rate, nor take into account any factors which might explain it.
On the other side of the coin, there was testimony that at the time of the denial of the Hospital's application there were nine CAT Scanners operational in Dade County, four in close proximity to the Hospital. Also, there was testimony that three more CAT Scanners had been approved for installation in Dade County at the time of respondent's final order herein denying petitioner's application. There was testimony in the record that CAT Scanners can reasonably perform 2400 scans per year based upon a 40 hour work week. Also, that three of the existing CAT Scanners in Dade County are underutilized, based upon the 2400 yearly capacity.
In reviewing the Hospital's proposal, respondent considered what it determined to be the low level of utilization of existing CAT Scanners in Dade County, the number *1276 of such scanners already operational in the county, and the number of CAT Scanners already approved by the Department for future installation in the county, and, based upon these factors, determined that there was no community need for additional CAT scanning equipment.
Our responsibility in reviewing the Department's final order herein is limited to the determination as to whether there exists in the record herein sufficient competent substantial evidence to support such order. That is to say, does the competent evidence before the hearing officer, which constituted the basis of respondent's order, substantially support the Department's conclusion that existing CAT scan facilities were being insufficiently used so as not to justify the need for an additional scanner in the Miami area.
Petitioner complains of the criteria used by the Department in arriving at its conclusion that existing scanners were being underutilized. That criteria being that a minimum of 2400 procedures per year per scanner is a reasonable requirement to be met before additional scanners should be approved. Its position in this regard is three-fold. First, it asserts that the 2400 figure is not supported by sufficient evidence to be used as a criteria. Second, that other than such 2400 scan standard applied in this case, the Department did not appear to have any state criteria for determining whether an application should be approved or not. Third, that such criteria of 2400 procedures per scanner per year was not formally promulgated under Section 120.54, Florida Statutes (1976 Supplement).
The Hospital also asserts that it has been denied "administrative" equal protection because it says, two other similarly situated hospitals had their scanner purchases approved during the same time that respondent had its application under consideration. That this inconsistency resulted because of the use of different utilization rates applied to the several applications and the absence of a promulgated and uniformly applied criteria relating to the means by which community need for scanners could be determined. It argues that such lack of uniformity constitutes an abuse of discretion requiring reversal herein under the provisions of Section 120.68(12), Florida Statutes (1976 Supplement).
We agree with these contentions of the Hospital and reverse. First of all, there was insufficient substantial and competent evidence before the hearing officer to justify the figure of 2400 procedures per year per scanner as the basis for determining that existing scanners were or were not underutilized. The only testimony before the hearing officer to support this conclusion was the hearsay statements of two physicians and two exhibits consisting of two unauthenticated reports, the first of which was purportedly prepared by the Office of Technology Assessment, a congressional board, for use by a U.S. Senate committee, and referred to by one of respondent's witnesses as a "second draft" of the report, with no indication that it was a final report prepared by that Board as its final assessment and recommendation as to the use of CAT Scanners, or to their utilization rate. The other exhibit is a report purportedly prepared by J. Lloyd Johnson Associates in 1976, likewise unauthenticated as to its veracity or trustworthiness. Both of these exhibits were hearsay, properly objected to by petitioner's counsel. Certainly such evidence does not meet the test of "substantial competent evidence" sufficient to sustain respondent's order herein.
Second, other than this 2400 per unit per year test, respondent Department had no other standard or criteria by which to measure CAT Scanner utilization, nor any state criteria for determining whether an application for such a scanner should be approved. Under its agreement with HEW, the Department is required to adopt standards, criteria or plans consistent with the general criteria prescribed by Section 1122 of the Social Security Act as hereinbefore set out in this opinion. If the Department finds that a proposed capital expenditure does not conform to these standards, criteria or plans, HEW will not reimburse a health care provider.
*1277 To deny a health care provider's application for reimbursement under Section 1122, the respondent was required to make a determination that the applicant's proposed expenditure was not "consistent with the standards, criteria, or plans developed pursuant to the Public Service Act * * * to meet the need for adequate health care facilities in the area covered by plan or plans so developed." 42 U.S.C.A. Section 1320a-1(b). This was not done by respondent agency. In fact, there is no evidence that the Hospital's proposed expenditure does not so conform, nor did the respondent provide any basis for a finding that the Hospital's proposed capital expenditure was not consistent with the federal standards, much less any previously promulgated state standards, criteria or plans. Its primary basis for denial of petitioner's application was that two CAT Scanners in the vicinity of the Hospital were not being utilized at or reasonably near the minimum determined usage of 2400 procedures per year and that an additional scanner had already been approved for installation at another hospital.
In the absence of the promulgation of state standards, criteria or plans, the only way that the Department's final order could possibly be sustained would be to find that the Hospital's application did not conform to the standards, criteria or plans prescribed by the provisions of Section 1122 of the Social Security Act. One of these standards is quality of care. The Department admitted that it did not consider quality of care in reviewing the Hospital's application. Another federal criteria is that the proposed expenditure would foster cost containment through improved efficiency and productivity. The hearing officer found that the Department did not produce evidence that "the cost of additional CAT Scanners was weighed against the cost of other desirable medical equipment or facilities before the determination to recommend disapproval" of the Hospital's application was made. However, the Hospital produced evidence that patient costs could be reduced by utilization by it of a CAT Scanner.
Furthermore, the hearing officer found that "no specific criteria upon which the determination of need is to be predicated is provided by the regulations". This finding was made in the face of the federal standard that requires a determination that a proposed project is to be judged on the basis of need in terms of health service required, and that there must be state standards or criteria to effect such determination. So, the hearing officer, whose recommendation was incorporated in the Department's final order based his recommendation upon the use of a formula of 2400 procedures per unit per year, which formula was never officially adopted by the Department prior to its consideration of the Hospital's application. Having found that this formula for utilization of scanners is not supported by substantial competent evidence, there exists in this record no basis for the Department's denial of the Hospital's application.
Even if the 2400 formula is a proper measurement of utilization, it was error to use it in this case because it had never been officially adopted and promulgated as required by Section 120.54, Florida Statutes. For that reason alone we would be compelled to reverse the Department's order of denial of the petitioner's application.
Finally, the respondent's order must be reversed because the record reflects that during the period of time under which it had petitioner's application under consideration, the Department, as a result of a hearing officer's recommendation, granted an application to another Dade County hospital and in so doing found that the 2400 scan per year per machine formula or standard was not a reasonable basis for determining community need in Dade County. In that proceeding, the hearing officer found that the Department had not adopted any criteria for determining community need for scanners. There, the hearing officer found that the mere fact that other facilities in the area were not all utilized up to the 2400 scan per year standard was not by itself sufficient to deny a hospital's application *1278 as there were reasons for such underutilization apart from case load.
We hold that such inconsistent results based upon similar facts, without a reasonable explanation, violate not only express provisions of the Administrative Procedure Act (Chapter 120, F.S.), but are violative of the equal protection guarantees of both the Florida and United States Constitutions. For this reason, in addition to the other reasons set forth herein, we find that the respondent's order denying petitioner's application should be reversed.
The Order of the respondent denying petitioner's application for federal reimbursement is quashed.
Reversed and remanded with directions to respondent to enter an order granting petitioner's application.
McCORD, C.J., and BOYER, J., concur.