444 So.2d 43 (1983)
Dorothy AMOS, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DISTRICT IV, Appellee.
No. AB-99.
District Court of Appeal of Florida, First District.
December 30, 1983.
Rehearing Denied February 1, 1984.
*44 Mark Greenberg, Jacksonville, for appellant.
Judith Curtin Fendrich, Asst. Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final order of the Department of Health and Rehabilitative Services affirming the Department's decision to deny appellant benefits in the Aid to Families with Dependent Children (AFDC) Program, based upon the Department's finding that Appellant Amos refused to cooperate in establishing the paternity of her daughter. We reverse the agency's action, since it was based upon "CSE Policy Clearance 79-6," a rule which has not been promulgated pursuant to the Florida Administrative Procedure Act. Further, the Department has not met its burden of affirmatively showing in the record that the "policy" is a reasonable one.
In the AFDC Program, a mother receiving assistance is required to cooperate with the Department in establishing the paternity of any child born out of wedlock for whom AFDC assistance is requested. If the Department determines that the mother has refused without good cause to cooperate with the agency in establishing paternity, the mother's needs will be removed from the AFDC grant and a different adult, called a "protective payee," is then appointed by the agency to receive a reduced grant for the benefit of the children in the household; the mother is not entitled to the use of the grant and is ineligible for Medicaid coverage for herself. One aspect of the AFDC cooperation requirement is that the mother must agree to pursue a paternity action against the alleged father through the Department's Child Support Enforcement (CSE) Unit.
It is uncontroverted that appellant filled out the Department's forms entitled "Request to Add a Child to an AFDC Grant" and "Confidential Verification of Birth," in each of which she named the putative father of her child, and that she later complied with the Department's request to provide information for its "Absent Parent Basic Information Form," including the putative father's address, telephone number, place of employment, and a description of his automobile. According to the AFDC case record, appellant was expressly asked whether any person other than the named *45 putative father could have been the father of her child, to which she replied in the negative. Appellant signed a verified complaint for paternity against the putative father and repeatedly contacted the CSE Unit to determine the status of the paternity action and to offer her assistance.
Subsequent to the filing of the paternity complaint, the putative father requested an HLA (Human Leucocyte Antigen) blood test,[1] to which appellant voluntarily agreed, even though the Department's cooperation rule does not require an AFDC recipient to participate in a blood test. Appellant appeared with her child at the designated location and submitted to blood sampling for both herself and the child; the samples were sent by the Department to a laboratory in Atlanta which reported the results to the CSE Unit by letter, which stated, in part: "Because the father ... does not share the required haplotype A3-BW35 with [appellant's child] the alleged father cannot be the biological father of the child."
Upon receipt of the HLA test results, the CSE Unit determined that appellant should be removed from her household AFDC grant because she had "refused to cooperate" in establishing paternity, based upon a document entitled "CSE Policy Clearance 79-6." This Policy Clearance essentially provides that when a woman names the putative father of her child, and subsequent HLA testing "excludes" the named putative father, the CSE Unit shall recommend to the AFDC Unit that the mother be removed from the household grant. The CSE Unit voluntarily dismissed appellant's paternity suit and sent an internal memorandum directing the AFDC Unit to apply CSE Policy Clearance 79-6 to appellant. The CSE Unit did not contact or otherwise advise appellant prior to sending a recommendation to remove her from the AFDC grant. The AFDC Unit sent appellant a notice stating that the Unit had received "information" from the CSE Unit that she had not cooperated in establishing paternity and that she would therefore be removed from the grant and a protective payee designated. No formal notice of adverse action or statement of the right to request a hearing was sent; appellant was merely informed that she should come into the AFDC office on a specified date and bring with her a person who could be designated the protective payee.
Appellant requested a hearing, which was held before an HRS hearing officer and resulted in facts being established as outlined above. At the hearing, Department representatives acknowledged that Amos had consistently named the putative father, that she had provided information sufficient to identify and locate him, that she had voluntarily initiated the paternity action against him, and that she had voluntarily participated in the HLA blood test in the context of the paternity action.[2] Nevertheless, *46 the Department took the position that removal of appellant from the grant for "refusal to cooperate" was required by CSE Policy Clearance 79-6.
The hearing officer entered an order holding that appellant had refused to cooperate in establishing the paternity of her child. In his order, the hearing officer acknowledged that appellant had been consistent in her assertion of the identity of the putative father and that the only contrary evidence was the result of the HLA test, but noted that this court had recently held that the results of HLA blood testing were admissible[3] and concluded that termination of appellant's grant for refusal to cooperate was therefore appropriate. In so doing, the hearing officer departed from his earlier holding in Counts v. Department of Health and Rehabilitative Services (District 4, Duval County, Unit 99, August 27, 1980),[4] a nearly identical case.
As a condition of receiving federal financial participation, a state must operate its AFDC program in accordance with federal law,[5] which requires, as a condition of eligibility for AFDC, that an applicant cooperate with the State in establishing the paternity of a child born out of wedlock, and further provides that if the applicant refuses to cooperate without good cause, assistance for the child must be provided by means of a "protective payment" to a third party rather than a grant to the applicant. The United States Department of Health and Human Services has promulgated regulations implementing this section at 45 Code of Federal Regulations, Section 232.12, in which "cooperation" is defined to include specified actions, all of which are relevant to or necessary for establishing paternity and support. In order to implement the provisions of 45 Code of Federal Regulations, Section 232.12, the Florida Department of Health and Rehabilitative Services promulgated Rule 10C-1.62, Florida Administrative Code.[6]
We do not accept the Department's characterization of CSE Policy Clearance 79-6 as merely a clarification of the definition of "cooperation" in Rule 10C-1.62 and the federal statutes. The Department's policy directing exclusion of a grant recipient based upon the result of a single HLA test does not derive directly or indirectly from the language of Rule 10C-1.62, Florida Administrative Code, or the federal law which it implements, and is not an unavoidable inference from the test result. Further, the agency requires that CSE Policy Clearance 79-6 be followed without discretion by every AFDC office in Florida. CSE Policy Clearance 79-6 has every characteristic of a rule as defined by Section 120.52(14), Florida Statutes, except that of promulgation pursuant to the Administrative Procedure Act, Section 120.54, Florida Statutes.
Whether an agency's statement is a rule which must be adopted in accordance with statutory procedure turns on the effect of the statement and not on the agency's characterization by some appellation other than "rule." State Department of Administration v. Harvey, 356 So.2d 323 *47 (Fla. 1st DCA 1977). The facts in this case, considered in light of the relevant case law,[7] indicate that CSE Policy Clearance 79-6 is indeed an agency statement of general applicability that "implements, interprets, or prescribes law or policy" and that it does not fall under the exception of Section 120.52(14)(a) for internal management memoranda, since it affects the private interests of AFDC recipients as well as procedures important to the public. Since CSE Policy Clearance 79-6 has not been promulgated as a rule under the procedures of Chapter 120, Florida Statutes, it is invalid. This is true even under the rule of McDonald v. Department of Banking and Finance Company, 346 So.2d 569, 582-584 (Fla. 1st DCA 1977),[8] since the agency has failed to affirmatively show the reasonableness and factual accuracy of the policy.
Central to the fairness of administrative proceedings is the right of affected persons to be given the opportunity for adequate and full notice of agency activities. These persons have the right to locate precedent and have it apply, and the right to know the factual basis and policy reasons for agency action. State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977). Inconsistent results based upon similar facts, without a reasonable explanation, violate Section 120.68(12)(b), Florida Statutes, as well as the equal protection guarantees of both the Florida and United States Constitutions. North Miami General Hospital, Inc. v. Department of Health and Rehabilitative Services, 355 So.2d 1272, 1278 (Fla. 1st DCA 1978).
The Department's policy of treating the results of a single HLA blood test as irrefutable proof that a recipient has "refused to cooperate" in establishing paternity has not been justified by the Department. The only apparent reason for the hearing officer's departure from his earlier finding in Counts v. Department of Health and Rehabilitative Services, supra, that the Department had failed to establish the reasonableness of CSE Policy Clearance 79-6, seems to be his reliance upon an incorrect interpretation of this court's holding in Carlyon v. Weeks, 387 So.2d 465 (Fla. 1st DCA 1980).
In Carlyon, supra, this court held that the HLA blood test was admissible in an action to establish paternity, where a sufficient predicate had been laid concerning its validity and degree of reliability. The case does not hold that the result of an HLA blood test should be given a preclusive effect, nor is it a basis for departure from the traditional requirement of establishing the competency of the evidence and allowing the trier of fact to determine the weight of the evidence. Although the level of accuracy of the HLA blood test, at least when used in conjunction with red blood cell testing, is over 90 percent,[9] the test is not absolutely infallible. The party seeking to introduce the test results as evidence must first establish a sufficient predicate by showing that proper sampling and testing procedures were followed and that precautions established to eliminate human error were observed. This the Department has failed to do.
The Department's decision to terminate appellant is therefore reversed, appellant is entitled to retroactive benefits to and including November, 1980, and the cause is remanded for further proceedings consistent herewith.
WENTWORTH and THOMPSON, JJ., concur.
NOTES
[1] The Human Leucocyte Antigen (HLA) test is a tissue-typing test which identifies the antigen markers of a child, eliminates those antigens which are identical to antigens carried by the mother, and compares the child's remaining antigens with those carried by the putative father. Because of the high number of different antigens and the fact that a child's antigens can only come from his mother and father, it is possible to "exclude" the possibility that a man is the biological father of a child when the testing is properly performed and shows that the putative father lacks an antigen found in the child that could not have been obtained from the mother. The HLA test can also be used, as are other blood tests, to assess the degree of probability that the putative father is the biological father of the child, although it cannot be used to unequivocally prove paternity.
[2] Appellant testified that in the eleven and one-half months before her child was born, she had had sexual relations with no man other than the putative father, that when she had discovered that she was pregnant he had offered to pay for an abortion, that she voluntarily participated in a paternity action against him and voluntarily agreed to take the HLA blood test, that she received no notice from the CSE Unit prior to the filing of a voluntary dismissal of her paternity action, and that when she received notice of the voluntary dismissal, she called and objected. The HRS representatives put forward no testimony which contradicted appellant's statements regarding her contacts with the putative father, nor did the Department present evidence indicating that any other person had engaged in sexual intercourse with appellant during the relevant time period.
[3] Carlyon v. Weeks, 387 So.2d 465 (Fla. 1st DCA 1980).
[4] The final order in Counts v. Department of Health and Rehabilitative Services was filed August 27, 1980, five months before appellant's hearing. In Counts, the hearing officer found that CSE Policy Clearance 79-6 was a rule which had not been promulgated pursuant to the Florida Administrative Procedure Act and that the Department had not met its burden of showing that the policy was a reasonable one by presenting competent, substantial evidence of the accuracy of the HLA blood test in general and of the particular test involved in that case. Since the Department failed to show that Counts failed to cooperate in establishing the paternity of her child and that CSE Policy Clearance 79-6, upon which the Department relied in terminating her benefits, was a reasonable policy, the hearing officer reversed the action of the Department and held Counts entitled to retroactive benefits.
[5] 42 United States Code, Section 602(a)(26)(B).
[6] Rule 10C-1.62 F.A.C., in effect at the time of the proceedings in the case at issue, was repealed in 1981 and replaced by Rule 10C-1.96. The changes in the rule, defining and establishing the requirement of "cooperation" by the AFDC recipient, are of no consequence to the outcome of this cause.
[7] McDonald v. Department of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977); Department of Health and Rehabilitative Services v. Stevens, 344 So.2d 290 (Fla. 1st DCA 1977); Department of Highway Safety and Motor Vehicles v. Florida Police Benevolent Association, 400 So.2d 1302 (Fla. 1st DCA 1981); Florida State University v. Dann, 400 So.2d 1304 (Fla. 1st DCA 1981).
[8] Florida Cities Water Co. v. Public Service Commission, 384 So.2d 1280, 1281 (Fla. 1980); Anheuser-Busch, Inc. v. Department of Business Regulation, 393 So.2d 1177, 1181-1182 (Fla. 1st DCA 1981).
[9] Carlyon v. Weeks, 387 So.2d 465, 466 (Fla. 1st DCA 1980).