463 So.2d 380 (1985)
FLORIDA MEDICAL CENTER, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. AX-20.
District Court of Appeal of Florida, First District.
January 24, 1985.
*381 Eric B. Tilton, Tallahassee, for appellant.
James M. Barclay, Tallahassee, for appellee.
NIMMONS, Judge.
Florida Medical Center (FMC) appeals from a final order of the Department of Health and Rehabilitative Services (HRS) adopting the hearing officer's recommended order denying FMC's application for a certificate of need (CON) for the acquisition of a nuclear magnetic resonance unit (NMR).[1]
FMC is a 400-bed acute care privately owned hospital located in Ft. Lauderdale. As of September 1983, it had 389 physicians on staff, including a radiology staff of nine radiologists and three radiological oncologists.
On February 18, 1983, FMC applied for a CON to purchase and install an NMR at its hospital in Ft. Lauderdale. The application was subsequently denied by HRS and, at FMC's request, a § 120.57 hearing was held. The hearing officer, who considered the statutory criteria set forth in Section 381.494(6)(c) (Florida Statutes 1982 Supp.), recommended that HRS adhere to its denial on the basis: (1) that placement of NMR's should be limited to research facilities; (2) that health risks associated with utilization of NMRs are not sufficiently known; (3) that there is no need for placement in FMC's health service area because of the presence of three such units in Dade County, an adjoining area; and (4) that placement at FMC's hospital is not financially feasible. For the reasons stated below, HRS's final order denying FMC's application is reversed.
The reason given that placement of such equipment was to be limited to research facilities was not based upon any rule promulgated by the agency; such reason could not be sustained on the basis that such was *382 "incipient or emerging agency policy," as was found by the hearing officer, because the agency failed to properly establish such non-rule policy.
To the extent an agency may intend in its final order to rely upon or refer to policy not recorded in rules for discoverable precedents, that policy must be established by expert testimony, documentary opinion, or other evidence appropriate to the nature of the issues involved and the agency must expose and elucidate its reasons for its discretionary action. Florida Cities Water Co. v. Public Service Commission, 384 So.2d 1280 (Fla. 1980); Anheuser-Busch, Inc. v. Dept. of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981); McDonald v. Dept. of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977).
E.M. Watkins & Co. v. Board of Regents, 414 So.2d 583, 588 (Fla. 1st DCA 1982). See also Amos v. Department of Health and Rehabilitative Services, 444 So.2d 43, 47 (Fla. 1st DCA 1984).
Further, the record is clear that FMC was singled out for application of this "research" standard whereas it was not considered (and indeed even rejected as a criterion) by HRS in its favorable consideration of several other applications for similar equipment, including that of a Jacksonville hospital which received approval for an NMR only one week prior to FMC's application. The agency failed to adequately distinguish FMC's application from other such applications so as to justify the application of the "research" standard. Denial on this ground was therefore improper. See North Miami General Hospital v. Office of Community Medical Facilities, 355 So.2d 1272 (Fla. 1st DCA 1978); Department of General Services v. Willis, 344 So.2d 580, 591 (Fla. 1st DCA 1977); Amos, supra, at p. 47.
Even if the agency, either by formal rule-making or by proper establishment of emerging agency policy, had adopted such a rule purporting to limit placement of such equipment in research facilities, it is questionable whether the statutory CON criteria under § 381.494(6)(c) (Florida Statutes 1982 Supp.) can be construed to encompass such a condition. The only criterion which appears to come close is that provided for in subsection 6:
(6)(c)6. The need for research and educational facilities, including, but not limited to, institutional training programs and community training programs for health care practitioners and for doctors of osteopathy and medicine at the student, internship, and residency training levels.
This was the section relied upon in the hearing officer's recommended order which was adopted by the agency. However, this case does not concern "the need for research and educational facilities."
Another reason given by the hearing officer and HRS for denial was that not enough is yet known about the effects of such device upon the human physiology. HRS, before and after its denial of FMC's application, has either not addressed the safety factor or has stated that there are no known adverse effects. FMC's was the only application which was denied because not enough was known about NMR's safety. In its granting of a CON for Shands Teaching Hospital in September, 1982, HRS stated:
The advantage [of the NMR] is in greatly improved diagnosis of tumors, stroke, and heart attack with no known adverse effects.
In its report on Miami Heart Institute's application, which was granted in November 1982, HRS made no mention of any safety criterion. St. Lukes Hospital in Jacksonville was granted a CON in February 1983 with no discussion of any safety risk. Mount Sinai Medical Center's application was also approved in February, 1983, HRS stating:
NMR imaging and spectroscopy will serve as an alternative to invasive procedures thereby reducing exploratory surgery and length of stay. NMR imaging entails virtually no radiation exposure to patient, a growing concern in medical care.
*383 As to Jackson Memorial Hospital's certificate granted in June, 1983, HRS had this to say:
The process is non-invasive, uses non-ionizing radiation, uses no contrast agent or radio-nucleides, and uses low power to the advantage of high risk patients... . This means greatly improved diagnosis... with no known adverse effects.
HRS has failed to demonstrate justification for disparate treatment of FMC on the risk issue and none is apparent from the record. The appealed order is therefore vulnerable as to that criterion. See North Miami General Hospital, supra; and Willis, supra.
Another reason relied upon by HRS for denial of FMC's application was that there was no need for an NMR in Broward County, FMC's health service area, inasmuch as three NMR units were located in Dade County. However, there is an absence of competent substantial evidence that such units were reasonably and economically accessible to patients in the Broward County service area. See Section 381.494(6)(c)5 (Fla. Statutes, 1982 Supp.).
The order of denial also relied upon the alleged lack of financial feasibility. The order found that NMRs had not yet received approval by the Food and Drug Administration and that there would be no Medicare reimbursement until such approval. Neither would private insurance afford reimbursement until such approval. However, in its prior approvals of NMRs, HRS did not rely upon any such policy standard and, in fact, did not even mention the same. HRS has failed in the case at bar to give reasonable justification for this "emerging" policy. See North Miami General Hospital, supra; and Willis, supra.
The order appealed is reversed and this cause is remanded with directions to the agency to issue the certificate of need.
THOMPSON and BARFIELD, JJ., concur.
NOTES
[1] A nuclear magnetic resonance scanner and imager is medical equipment that looks like a computerized axial tomography scanner (CT scanner) but which works on different principles to obtain an image of portions of the interior of the human body. Utilizing the atomic nuclei of human cells, it aligns and rotates the nuclei by the application of a magnetic field and, once so aligned, applies a radio signal which tips the nuclei and gives them a small amount of extra energy (about one-trillionth of that given in an x-ray) which is radiated back as a radio signal. A radio coil and receiver within the unit pick up this signal and, through computer assistance, translate it into an image which a physician can interpret as normal or abnormal. No radioactivity of any kind is utilized by an NMR device. Instead, the operative force is magnetic. Both CT scanners and NMR scanners are diagnostic tools, not therapeutic measures. They differ significantly, however, in how they operate and what they can see. The CT scanner looks primarily at an alteration of an x-ray beam  it receives a signal from bone, not soft tissue. The NMR scanner receives its signal from soft tissue, not bone. It picks up conditions that CT scanners do not see. In short, the NMR seems to give increased diagnostic ability not only by what it can do, but also by the quality of the picture produced. Some experts believe that the NMR is the most significant diagnostic tool since the development of x-rays.