496 So.2d 147 (1986)
UPJOHN HEALTHCARE SERVICES, INC., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES and Northwest Florida Home Health Agency, Inc., Appellees.
No. BH-479.
District Court of Appeal of Florida, First District.
July 22, 1986.
Rehearing Denied November 5, 1986.
Donna H. Stinson of Moyle, Flanigan, Katz, FitzGerald & Sheehan, P.A., Tallahassee, for appellant.
William L. Hyde of Culpepper, Pelham, Turner & Mannheimer, Tallahassee, for appellee Dept. of Health and Rehabilitative Services.
Leonard H. Carson and Richard T. Donelan, Jr. of Carson & Linn, P.A., for appellee Northwest Fla. Home Health Agency, Inc.
FRANK, Associate Judge.
Upjohn Healthcare Services, Inc. (Upjohn) appeals from a final order entered by *148 the Department of Health and Rehabilitative Services (HRS) denying its application for a certificate of need (CON). Since 1973 Upjohn has provided home health care to patients in Escambia County capable of paying for the service. The CON sought by Upjohn would confer upon it the status of a "home health agency" as defined in section 381.493(j), Florida Statutes, and thus enable it to receive governmental reimbursement for services provided to medicaid and medicare-eligible patients.
In May of 1983 when Upjohn originally applied for a CON, HRS denied the application based upon a methodology or formula known as the "Rule of 300." As a result of that action, Upjohn sought a hearing pursuant to section 120.57, Florida Statutes, but the hearing was continued pending the outcome of the appeal in HRS v. Johnson & Johnson, 447 So.2d 361 (Fla. 1st DCA 1984). The Rule of 300 was declared invalid in Johnson & Johnson because it ignored certain statutory criteria and exceeded HRS' delegated authority. Following this court's disposition of Johnson & Johnson, Upjohn's CON application was scheduled for hearing, and Northwest Florida Home Health Agency, Inc. (Northwest), one of two certified home health agencies in Escambia County, was permitted to intervene. The record discloses that, in addition to Northwest, the Visiting Nurses Association, a unit of the Escambia County Health Department, currently provides home health agency services in Escambia County. It, however, did not intervene in the proceeding.
At Upjohn's CON application hearing, conducted before an officer from the Division of Administrative Hearings, HRS presented no evidence of a need methodology; indeed, at that time HRS had not adopted a rule to succeed the invalidated Rule of 300. Thus, in the face of no standards promulgated by HRS, Upjohn tendered an expert witness who, using four different methodologies, testified as to the need for an additional home health agency in Escambia County. The hearing officer, however, rejected each of Upjohn's proffered methodologies; he formulated a methodology and ultimately concluded that no unmet need for an additional home health agency existed in Escambia County.
Prior to the hearing officer's entering his recommended order, however, HRS developed and began to apply a revised methodology for determining the need for home health agencies.[1] In applying the newlyfashioned formula to Upjohn's CON application, HRS determined there was a need for an additional home health agency in Escambia County and stipulated with Upjohn to such need. The hearing officer nevertheless rejected the stipulation in reliance upon that portion of section 120.57(1)(b)(3) which provides that "[t]he referring agency shall take no further action with respect to the formal proceeding, except as a party litigant, as long as the division has jurisdiction over the formal proceeding"; he entered an order recommending that Upjohn's application for a CON be denied. Upjohn then moved to reopen the record to place in evidence HRS' current policy regulating the grant or denial of home health agency applications. After HRS published its policy as a proposed rule in the Florida Administrative Weekly, Upjohn filed a notice of supplemental authority with HRS, but in spite of its revised rule HRS entered a final order denying Upjohn's motion to reopen the record, adopted the hearing officer's findings of fact and conclusions of law and denied Upjohn a CON. Upjohn appealed from that final agency action. For the reasons expressed below, we reverse.
*149 Once again HRS has strayed from its legislatively assigned territory. Two major errors emerge in this case. First, section 381.494(7)(b)(1) requires local health councils to develop district wide plans "using [a] uniform methodology as set forth by the department." Furthermore, the "elements of an approved district plan which are necessary to the review of any certificate of need application shall be adopted by the department as a part of its rules." HRS, "as the single state agency to issue, revoke, or deny certificates of need," is required to "promulgat[e] rules and minimum standards for the issuance of certificates of need," § 381.494(8)(b), and it is to review CON applications "in accordance with the district plans," § 381.494(8)(a). Within the foregoing statutory setting, it is plain beyond question that HRS, by implementing the hearing officer's perception of a methodology for determining need, effectively abdicated its role in the legislatively prescribed scheme and improperly delegated its authority to the hearing officer. Thus, Upjohn entered into the CON process without a preexisting statutorily mandated standard by which it, and thereafter HRS, could gauge the element of need for an additional home health agency in Escambia County. Upjohn attempted to surmount this unwarranted obstacle through its presentation of four need methodologies  one of which was found in the local health plan  which the hearing officer either chose to ignore or to reject.
The second and more egregious error, however, lies in HRS' refusal to reopen the record and permit Upjohn to present its proof based upon the refashioned rule for calculating need. We have observed in prior cases that:
To the extent an agency may intend in its final order to rely upon or refer to policy not recorded in rules for (sic) discoverable precedents, that policy must be established by expert testimony, documentary opinion, or other evidence appropriate to the nature of the issues involved and the agency must expose and elucidate its reasons for its discretionary action (citations omitted). Florida Medical Center v. Dept. of Health and Rehabilitative Services, 463 So.2d 380, 382 (Fla. 1st DCA 1985) (quoting E.M. Watkins & Co. v. Board of Regents, 414 So.2d 583, 588 (Fla. 1st DCA 1982)).
Here, HRS relied upon a policy not recorded in rules or discoverable precedents  the hearing officer's unauthorized use of his own methodology for calculating need. When HRS ultimately formulated a methodology for CON applications, following condemnation of the Rule of 300, its failure to accord Upjohn the opportunity for discovery, the presentation of expert testimony, or appropriate documentation pertinent to the proposed rule and its application to the pending CON proceeding was arbitrary and capricious. Indeed, based upon the record before us considered in its totality, it cannot be gainsaid that HRS arrogated from some undefined source a power to revamp that which the legislature had ordained. Article II, Section 3 of the Florida Constitution will not tolerate such behavior.
In its final order and before us, HRS attempts to justify its refusal to reopen the record asserting that such procedure would have engendered the kind of legal quagmire denounced by this court in Florida Dept. of Transportation v. J.W.C. Co., Inc., 396 So.2d 778, 784 (Fla. 1st DCA 1981):
If one side were permitted to produce additional evidence ... then the other side would necessarily have to be given the same privilege, and each side would of necessity have to be given the right of confrontation and cross-examination of the additional witnesses, and possibly rebuttal. We do not envision the Administrative Procedures Act as permitting such a never-ending process.
Our holding in J.W.C. Co., reaffirmed in Collier Medical Center, Inc. v. State, Dept. of Health and Rehabilitative Services, 462 So.2d 83, 86 (Fla. 1st DCA 1985), is distinguishable and of no significance to the matter at hand. In each of those cases the additional evidence the litigants proposed *150 for consideration did not flow from or involve a change in HRS' policy. Such distinction is crucial. Following the Upjohn hearing, HRS had settled on a formula that apparently disclosed a need for one additional home health agency in Escambia County, HRS had applied that formula as an incipient policy to other pending CON applications, and on the basis of that policy had entered into a stipulation with Upjohn for the award of a CON. Although the hearing officer may have correctly refused to sanction the stipulation because of section 120.57(1)(b)(3) and the effect of the stipulation upon Northwest, HRS' ultimate refusal to allow the development of evidence of an existing policy it was actually utilizing was nothing less than whimsical. Furthermore, the prophesied monster of never-ending litigation envisioned in J.W.C. Co. and Collier Medical simply would not rear its fearsome head in a case such as this.
In accordance with the foregoing, we reverse HRS' final order and remand this matter to it with direction that a CON be granted to Upjohn.
BOOTH, C.J., and SMITH, J., concur.
NOTES
[1] The rule, designated as proposed Rule 10.5.11(14), F.A.C., adopted by HRS to replace the Rule of 300, was also found invalid by a hearing officer on March 12, 1986, in three cases styled Home Health Services and Staffing Association, et al. v. State of Florida, Department of Health and Rehabilitative Services, DOAH No. 85-1377R, Gulf Coast Home Health Services of Florida, Inc. v. State of Florida, Department of Health and Rehabilitative Services, DOAH No. 85-1378R, and Associated Home Health Agency v. State of Florida, Department of Health and Rehabilitative Services, DOAH No. 85-1380R. On April 11, 1986, HRS filed a notice of appeal seeking review by this court of the hearing officer's final order.