ERVIN, Judge.
Appellants, Geraldine Lavem Austin and Phyllis Lowery, appeal an order issued by a hearing officer of the Division of Administrative Hearings, upholding the validity of Florida Administrative Code Rule 10C-25.-06, proposed by the Department of Health and Rehabilitative Services (HRS).[1] We affirm as to all issues.
The challenged rule requires that applicants for public assistance cooperate with the HRS Child Support Enforcement Unit (CSE) in identifying, locating and establishing paternity of parents of children for whom public assistance is received. Among the rule’s requirements is that the parent cooperate by assisting in establishing the paternity of a child bom out-of-wedlock. Rule 10C-25.06(l)(a)2. The only excuse for non-cooperation is refusal to cooperate for good cause, as defined by the federal government in 45 CFR Parts 232.-40-232.49. The rule defines non-cooperation to include situations as where a mother identifies one or more men as putative fathers, but Human Leucocyte Antigen (HLA) or other scientific tests indicate that none of the persons identified could in fact have been the father of the child. The rule states that under such circumstances the mother “shall be deemed non-cooperative.” Rule 10C-25.06(2)(a).
The effect of the mother’s being deemed non-cooperative is for her non-cooperation to be reported by the CSE Office to the Public Assistance Unit. Rule 10C-25.-06(3)(a). The Public Assistance Unit will then determine whether to enforce the mother’s eligibility for continued public assistance. Before it can take action the unit must provide the welfare recipient with an opportunity for a “fair hearing.” Rule 10C-25.06(3)(b).
The statutory authority for the promulgation of the rule is provided in Section 409.2572, Florida Statutes (1985), which states that any person having custody of a dependent child who fails to cooperate with the department “shall have his need removed from the public assistance grant.”[2] Section 409.2572 implements federal requirements for cooperation and removal of non-cooperating parents from Aid To Families With Dependent Children (AFDC). See 42 U.S.C.A. Section 602(a)(26)(B) (West Supp.1986) and 45 CFR 232.12(d) (1985).
The hearing officer concluded that the proposed rule was not an invalid exercise of delegated legislative authority, finding the rule was neither arbitrary nor capricious and was clearly within the statutory authority of HRS. He also concluded that evidence presented at the hearing estab *779 lished that HLA and other blood tests referenced in the rule are reliable means of excluding wrongfully accused putative fathers.[3]
Initially, we reiterate the often-stated rule that agencies are given wide discretion in the exercise of their lawful rulemaking authority. “An agency’s construction of a statute is entitled to great weight and is not to be overturned unless clearly erroneous." Department of Professional Regulation, Board of Medical Examiners v. Durrani, 455 So.2d 515, 517 (Fla 1st DCA 1984). This court in Agrico Chemical Co. v. Department of Environmental Regulation, 365 So.2d 759, 763 (Fla. 1st DCA 1978), cert. den. sub nom., Askew v. Agrico Chemical Co., 376 So.2d 74 (Fla.1979), stated that a court must uphold the validity of a proposed rule, if the rule is reasonably related to the purpose of the enabling legislation, and is not arbitary and capricious. The burden is on one who attacks a rule to show that the rule exceeds its statutory delegated authority. The person attacking the rule must show also that the rule is arbitrary and capricious by a preponderance of evidence. Id.
The only issue[4] we deem necessary to discuss is appellants’ argument that the rule creates two irrebutable presumptions from the results of a negative blood test: (1) That a man is not a child’s father; and (2) that a mother has refused to cooperate. Appellants contend that these irrebutable presumptions are an attempt by HRS to overrule Amos v. Department of Health and Rehabilititive Services, 444 So.2d 43 (Fla. 1st DCA 1983) by rule. In Amos, this court invalidated a non-rule policy clearance used by HRS to sanction welfare mothers who failed to cooperate in identifying the fathers of their children. Under the policy clearance, exclusion from a welfare grant was based on the results of a single HLA test, with no discretion given to the AFDC office to decide whether or not to impose sanctions. 444 So.2d at 46.
We agree with HRS that the requirement of a fair hearing and the discretion given to the public assistance unit in the rule provide a welfare mother with the opportunity to prevent the imposition of sanctions after a mother has been deemed non-cooperative. We also note that during oral argument before this court, HRS assured us that there was discretion in the rule and that a mother could raise such defenses as errors in the testing procedures, or genetic abnormalities during a fair hearing to prevent the automatic cutoff of her share of an AFDC grant. Thus, we conclude that the rule is not an attempt to overrule Amos.
AFFIRMED.
BOOTH, C.J. and THOMPSON, J., concur.

. The number of Proposed Rule 10C-25.06 has been changed to 10C-25.006. 12 Fla.Admin. Weekly 547-48 (2/7/86).

. Appellee has suggested that the passage of 1986 Fla. Sess. Law Serv. 86-220 (West) by the 1986 Florida legislature has rendered the rule challenge moot. Chapter 86-220 includes an amendment to § 409.2572, Fla. Stat., which codifies that part of the rule dealing with cooperation and noncooperation. The act also creates § 742.12, Fla.Stat., which establishes the definitive nature of scientific tests determining nonpa-ternity: “If the test results show the alleged father cannot be the biological father, the case shall be dismissed with prejudice." § 742.12(1). Although the language in the statute appears to create a conclusive persumption of noncooperation, any issue attacking the validity of the statute is not before us since it will not go into effect until October 1, 1986. Clearly the issues relating to the validity of the rule have not been rendered moot by passage of the above statutes. We note also that the hearing officer denied a motion to stay this rule pending appeal on April 3, 1986 and the rule went into effect on April 1, 1986. Therefore, if this court chose to invalidate the rule, the appellants and others affected by the rule could seek relief from the sanctions allowed by the rule for the six-month period between April 1, 1986 and October 1, 1986.

. Appellant’s expert testified that exclusions of putative fathers via HLA and other blood tests are 99 percent accurate in excluding falsely accused fathers. He testified that human error and certain genetic conditions might result in erroneous test results up to one percent of the time. One of appellee’s experts testified that an exclusion derived via paternity blood tests is "100 percent conclusive.” Another expert testifying for appellee stated that a blood test excluding a possible father, if properly administered, is "absolutely conclusive proof that a man is not the father of a child.” While all experts acknowledged that errors can occur during the testing process, the hearing officer concluded that the testing laboratories used by the state of Florida "follow established protocols to minimize errors and issue correct results to the maximum extent possible, and within degrees accepted by the medical community.”

. We agree with appellants’ contention that the hearing officer’s construction of the “good cause” exception was in error. However, this erroneous conclusion was harmless error and does not warrant reversal.