537 So.2d 633 (1988)
B.K., Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DISTRICT 7, ORANGE COUNTY, Appellee.
Nos. 87-11, 87-1466.
District Court of Appeal of Florida, First District.
December 29, 1988.
Rehearing Denied February 14, 1989.
Lester C. Wisotsky, Greater Orlando Area Legal Services, Orlando, for appellant.
James A. Sawyer, Jr., District Legal Counsel, Dept. of Health and Rehabilitative Services, Orlando, for appellee.
ERVIN, Judge.
In these consolidated administrative cases, B.K. appeals from two orders entered by the Department of Health and Rehabilitative Services (department), the first removing her needs from the Aid to Families With Dependent Children (AFDC) grant, based on her alleged noncooperation with the Child Support Enforcement (CSE) Unit of the department, and the second, declining to reinstate benefits, thereby rejecting appellant's argument that she had taken subsequent action which sufficiently established her cooperation with CSE. We reverse and remand.
As a condition to a mother's continued eligibility for public assistance, she is required by section 602 of the Social Security Act (42 U.S.C. § 602(a)(26)(B)) to cooperate with the state in establishing the paternity of a child born out of wedlock for whom aid is claimed. The specifications for cooperation are, among other provisions, more fully *634 set out in 45 C.F.R. § 232.12,[1] Florida Administrative Code Rule 10C-25.006,[2] and Section 409.2572, Florida Statutes.
B.K. first applied for public assistance benefits with the department in July 1983, nearly two months after the birth of her child out of wedlock, by naming only her former husband, from whom she had been divorced in September of the preceding year, as the child's father. Based upon the information provided, the department commenced AFDC payments, on both her and her child's behalf. After an issue arose as to whether the former husband was in fact the father of her child, B.K. was requested to complete another paternity questionaire, which specifically asked if she had had "intercourse with any other man 5 months before or 5 months after the date of conception of the child," and, although there is a dispute by B.K. concerning her response which was filled in by a department employee, the answer on the form discloses a negative answer. When Human *635 Leukocyte Antigen (HLA) testing later excluded the former husband as the child's father, benefits to B.K.  but not to her child  were discontinued.
The mother attempted to purge the finding of noncooperation, by supplying information in an affidavit regarding another sexual contact, identified generally as being of Hispanic origin. But, because appellant had twice previously answered negatively to such questions, the department denied her appeal for reinstatement of benefits.
The department's interpretation of rule 10C-25.006(2) is that a mother is considered to have lied if she identifies one or more persons as the possible father of her child, and if such persons are later excluded as the father by HLA or other scientific testing; she is then presumed noncooperative. The only way she may thereafter be permitted to cure the presumption of noncooperation is if she subsequently identifies another person as the father, who is not excluded by such testing as the biological father. The department's interpretation will not allow the presumptive effect of noncooperation, under such circumstances, to be overcome by evidence simply disclosing that the mother later attested, under penalty of perjury, her lack of any additional information regarding another putative father  although, if appellant had initially so sworn, she would then be considered cooperative.
We agree with the department that the validity of rule 10C-25.006, relating to a recipient's cooperation with the CSE unit in its effort to collect child support, has previously been upheld by this court's opinion in Austin v. Dep't of Health and Rehabilitative Servs., 495 So.2d 777 (Fla. 1st DCA 1986). As we earlier indicated in Austin, we find nothing in rule 10C-25.006 that is repugnant to the federal purpose in presuming a mother noncooperative, if her identification of one or more persons as the father of her child has been impeached by HLA or other scientific testing. Austin, however, did not involve any issue regarding how the effect of such presumption could be overcome. We cannot agree with the department's interpretation that the sole means by which a mother may rebut the presumption is by identifying as the father another person who is not excluded by scientific testing. Our disagreement with the agency's interpretation of its own rule is not, under the circumstances, a repudiation of our frequently expressed standard of review over administrative action, recognizing that courts will defer to any interpretation of an agency that falls within the permissible range of interpretations. See Dep't of Professional Regulation, Bd. of Medical Examiners v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984); Dep't of Admin. v. Nelson, 424 So.2d 852 (Fla. 1st DCA 1982); State Dep't of Health and Rehabilitative Servs. v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981). Were we reviewing solely the agency's interpretation of its rule and the Florida enabling statute, we would not hesitate to uphold it under the above review standard. As Austin makes clear, however, the state regulatory scheme must be harmonized with the paramount federal purpose. Austin, moreover, did not address the question of whether the interpretation placed upon the rule by the department, in implementing the terms of the rule, is consistent with applicable federal law. As to this narrow issue, we agree with appellant that the department's interpretation is in excess of the scope of authority delegated to it by Congress.
We were recently confronted with a similar point in Sapp v. Daniels, 520 So.2d 641 (Fla. 1st DCA 1988), in which we disapproved a trial court's interpretation of Section 409.2554(5), Florida Statutes (1985),[3] placing the burden on both the custodial and noncustodial parents of dependent children to reimburse HRS for public assistance monies received by the custodial parents on behalf of their minor children. In holding that the statute could not under such circumstances be so construed as to custodial parents, we observed that although *636 each state is free to set its own monetary standard of need and level of benefits for an AFDC program, a state, in carrying out the terms of the federal act, is not free to narrow federal standards that have defined categories of persons eligible for aid. Therefore, once a class has been accorded eligibility by federal standards, a state cannot impose any additional restrictions on such class. See Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971).
As in Sapp, we will not presume that the Florida Legislature or the department, in implementing the AFDC provisions of the Social Security Act, deliberately pursued a course inconsistent with the paramount congressional purpose, which is to help the parents or relatives of needy dependent children who live with and care for them to "retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection... ." 42 U.S.C. § 601.
Our attention is necessarily focused upon the question of whether the federal definition of noncooperation, found in 45 C.F.R. § 232.12, from which the Florida statute and rule were derived, was intended to supply the state of Florida with "clearly evidenced" authority to exclude persons such as B.K. from the benefits of the Social Security Act. Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448, 453 (emphasis added). Section 232.12(b)(3) of 45 C.F.R. states that the term "cooperate" includes, insofar as it is relevant to the provisions of subsection (a)  in the instant case that portion thereof requiring the mother to assist the state in locating the parent of the child whose paternity is at issue  the requirement that the applicant either provide such information, or, if she is unable to do so, that she attest to the lack of identification. We therefore conclude, after examining the provisions of 45 C.F.R. § 232.12, and comparing them with the relevant provisions of rule 10C-25.006, and section 409.2572, that the presumption of noncooperation, arising from the language of both the state statute and rule, may be rebutted by evidence showing a recipient's statement under oath disclosing her lack of additional information.[4]
Consequently, the effect of harmonizing rule 10C-25.006 and section 409.2572 with 45 C.F.R. § 232.12 is that once a recipient identifies one or more persons as the possible father of the child, and asserts that there are no others who could be the child's father, and HLA or other scientific tests later exclude the persons so identified, the department may deem the recipient noncooperative and consider it has the right to deny benefits to the applicant. The department cannot, however, continue its denial if the applicant, under penalty of perjury, later attests to the lack of information, or gives incomplete information, attesting that she has no more information to give, such as here, regarding the identity of any other person as the putative father of the child. A construction of the rule that would deny benefits in the face of any such attestation must be invalidated as violative of federal AFDC standards authorized by the Social Security Act, because it cannot be said that the determination of noncooperation, as advanced by the department, is clearly evidenced from either the Act or from its legislative history.
The order entered below is REVERSED and the case REMANDED for further proceedings consistent with this opinion.
WENTWORTH and ZEHMER, JJ., concur.
NOTES
[1] Paragraphs (a) and (b) of section 232.12 provide in part:

The State plan must meet all requirements of this section.
(a) The plan shall provide that as a condition of eligibility for assistance, each applicant for or recipient of AFDC will be required to cooperate (unless good cause for refusing to do so is determined to exist in accordance with §§ 232.40 through 232.49 of this chapter) with the State in:
(1) Identifying and locating the parent of a child for whom aid is claimed;
(2) Establishing the paternity of a child born out of wedlock for whom aid is claimed;
(3) Obtaining support payments for the applicant or recipient and for a child for whom aid is claimed; and
(4) Obtaining any other payments or property due the applicant or recipient or the child.
(b) The plan shall specify that cooperate includes any of the following actions that are relevant to, or necessary for, the achievement of the objectives specified in paragraph (a) of this section:
(1) Appearing at the office of the State or local agency or the child support agency as necessary to provide verbal or written information, or documentary evidence, known to, possessed by, or reasonably obtainable by the applicant or recipient;
(2) Appearing as a witness at judicial or other hearings or proceedings;
(3) Providing information, or attesting to the lack of information, under penalty of perjury; ....
(Emphasis added in (3).)
[2] Pertinent provisions of the rule state:

(1) Cooperation Required.
(a) As a condition of eligibility for public assistance, an applicant or recipient must cooperate with the Child Support Enforcement Unit in its efforts to collect child support. The requirement to cooperate will be excused only when good cause for refusing to do so is determined to exist in accordance with 45 CFR Parts 232.40 through 232.49. .. . The applicant or recipient must cooperate by:
1. Identifying and helping to locate the alleged parent or responsible parent of a child for whom public assistance is received;
2. Assisting to establish the paternity of a child born out of wedlock for whom public assistance is received;
* * * * * *
(b) Cooperation includes but is not limited to the following actions that are relevant to, or necessary for the achievement of the objectives of locating the responsible parent, establishing paternity, establishing a support obligation, and collecting and enforcing a support obligation:
* * * * * *
4. Providing information regarding the identity or location of the alleged father of the child or attesting to the lack of information, under penalty or criminal sanctions for falsity;
5. Identifying another putative father when an earlier named putative father has been excluded by HLA or other scientific test; and,
6. Paying to the child support agency or other public assistance agency any child support received from the responsible parent after the assignment has become effective.
(2) Non-cooperation. Non-cooperation or failure to cooperate shall be defined to include but not be limited to the following conduct:
(a) Failure or refusal to identify the father of the child, or, where more than one man could be the father of the child, to identify all such persons. If the mother identifies one or more persons as possible fathers of the child and asserts that there are no others who could be the father of the child, but HLA or other scientific test indicates that none of the persons identified could in fact have been the father of the child, then the mother shall be deemed non-cooperative. If she subsequently identifies another person as a possible father of the child, she shall still be deemed non-cooperative until such person has been given an HLA or other scientific test and is not excluded as the father by such test.
The above rule is practically identical to the language found in Section 409.2572, Florida Statutes.
[3] Subsection (5) of this section defines responsible parent as "the natural or adoptive parent of a dependent child, which parent owes a duty of support... ."
[4] Although we stated in Austin that the 1986 amendment to Section 409.2572, Florida Statutes, as well as Rule 10C-25.006(1)(a)(2), appear to create a conclusive presumption of noncooperation, we clearly did not pass upon that issue, because all that was before us was simply the validity of the rule, sustained after a section 120.56 rule challenge proceeding. We also pointed out that a construction of the statute was not before the court in that it was not effective until October 1, 1986, following the adoption of the rule. See Austin, 495 So.2d at 778 n. 2.